# KENTUCKY *v.* STINCER

No. 86–572.   Argued April 22, 1987—Decided June 19, 1987

BLACKMUN, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, POWELL, O'CONNOR, and SCALIA, JJ., joined. MARSHALL, J., filed a dissenting opinion, in which BRENNAN and STEVENS, JJ., joined, *post*, p. 748.

*Penny R. Warren,* Assistant Attorney General of Kentucky, argued the cause for petitioner. With her on the briefs were *David L. Armstrong,* Attorney General, and *John S. Gillig,* Assistant Attorney General.

*Mark A. Posnansky,* by appointment of the Court, 479 U. S. 1005, argued the cause and filed a brief for respondent.*

---

*Briefs of *amici curiae* urging reversal were filed for the State of Arkansas et al. by *Steve Clark,* Attorney General of Arkansas, and *Rodney A. Smolla,* joined by the Attorneys General for their respective jurisdictions as follows: *Don Siegelman* of Alabama, *Charles M. Oberly III* of Delaware, *Robert A. Butterworth* of Florida, *Charles Troutman* of Guam, *Jim Jones* of Idaho, *Linley E. Pearson* of Indiana, *Neil F. Hartigan* of Illinois, *Robert T. Stephan* of Kansas, *William J. Guste, Jr.,* of Louisiana, *Frank J. Kelley* of Michigan, *Hubert H. Humphrey III* of Minnesota, *Edwin L. Pittman*

JUSTICE BLACKMUN delivered the opinion of the Court.

The question presented in this case is whether the exclusion of a defendant from a hearing held to determine the competency of two child witnesses to testify violates the defendant's rights under the Confrontation Clause of the Sixth Amendment or the Due Process Clause of the Fourteenth Amendment.

I

Respondent Sergio Stincer was indicted in the Circuit Court of Christian County, Ky., and charged with committing first-degree sodomy with T. G., an 8-year-old girl, N. G., a 7-year-old girl, and B. H., a 5-year-old boy, in violation of Ky. Rev. Stat. § 510.070 (1985). After a jury was sworn, but before the presentation of evidence, the court conducted an in-chambers hearing to determine if the two young girls were competent to testify.[1] Over his objection,

of Mississippi, *William L. Webster* of Missouri, *Mike Greely* of Montana, *Brian McKay* of Nevada, *Stephen E. Merrill* of New Hampshire, *W. Cary Edwards* of New Jersey, *Hal Stratton* of New Mexico, *Lacy H. Thornburg* of North Carolina, *Nicholas Spaeth* of North Dakota, *Dave Frohnmayer* of Oregon, *LeRoy S. Zimmerman* of Pennsylvania, *James E. O'Neil* of Rhode Island, *T. Travis Medlock* of South Carolina, *Roger A. Tellinghuisen* of South Dakota, *W. J. Michael Cody* of Tennessee, *Jeffrey Amestoy* of Vermont, *J'Ada Finch-Sheen* of the Virgin Islands, *Charles G. Brown* of West Virginia, and *Donald J. Hanaway* of Wisconsin; and for the Appellate Committee of the California District Attorneys Association by *Ira Reiner* and *Harry B. Sondheim*.

Briefs of *amicus curiae* urging affirmance were filed for the American Civil Liberties Union by *George Kannar;* and for the National Association of Criminal Defense Lawyers by *Nancy Hollander.*

*Donald N. Bersoff* filed a brief for the American Psychological Association as *amicus curiae.*

[1] Immediately prior to the competency hearing of the two girls, the prosecutor moved that the charge regarding B. H., the 5-year-old boy, be dismissed because the prosecution did not believe B. H. was competent to testify. Respondent did not object and the court granted the prosecutor's motion. Tr. 13–14.

respondent, but not his counsel (a public defender), was excluded from this hearing. Tr. 15.

The two children were examined separately and the judge, the prosecutor, and respondent's counsel asked questions of each girl to determine if she were capable of remembering basic facts and of distinguishing between telling the truth and telling a lie. *Id.*, at 15–26. T. G., the 8-year-old, was asked her age, her date of birth, the name of her school, the names of her teachers, and the name of her Sunday school. She was also asked whether she knew what it meant to tell the truth, and whether she could keep a promise to God to tell the truth. *Id.*, at 16–18.[2] N. G., the 7-year-old girl, was asked similar questions. *Id.*, at 20–25.[3] The two children were not asked about the substance of the testimony they were to give at trial. The court ruled that the girls were competent to testify. Respondent's counsel did not object to these rulings. *Id.*, at 20, 25.

Before each of the girls began her substantive testimony in open court, the prosecutor repeated some of the basic questions regarding the girl's background that had been asked at the competency hearing. *Id.*, at 31–33 (direct examination of T. G.) (questions regarding age, where the witness attended school and Sunday school, and the like); *id.*, at 66 (direct examination of N. G.) (questions regarding age and where the witness attended school). T. G. then testified, on direct examination, that respondent had placed a sock over her eyes, had given her chocolate pudding to eat, and then had "put his d–i–c–k" in her mouth. *Id.*, at 34. N. G., on direct examination, testified to a similar incident. *Id.*, at 69.[4]

---

[2] In response to these questions, T. G. stated that telling the truth meant "[d]on't tell no stories." *Id.*, at 17.

[3] N. G. replied that she would "get a whopping" if she told a lie. *Id.*, at 24.

[4] There is some confusion as to whether T. G. knew what a "d–i–c–k" was, although she spelled the word at trial. *Id.*, at 55–58. It also

On cross-examination, respondent's counsel asked each girl questions designed to determine if she could remember past events and if she knew the difference between the truth and a lie. Some of these questions were similar to those that had been asked at the competency hearing. See *id.*, at 38–39, 44–47, 60–63 (cross-examination of T. G.); 71–72, 74–75, 78–83 (cross-examination of N. G.). After the testimony of the girls was concluded, counsel did not request that the trial court reconsider its ruling that the girls were competent to testify.[5] The jury convicted respondent of first-degree sodomy for engaging in deviate sexual intercourse and fixed his sentence at 20 years' imprisonment.[6]

---

appears that N. G. may have recanted her testimony somewhat on cross-examination. *Id.*, at 77–78. These facts, however, relate to whether the evidence was sufficient to convict respondent of the crimes charged. The Kentucky Supreme Court concluded that the evidence was sufficient to withstand a motion for a directed verdict of acquittal. 712 S. W. 2d 939, 941 (1986). That ruling is not before us in this case.

[5] After the two girls testified, the prosecution stated that it also wished to present the testimony of E. T., a 4-year-old boy who allegedly had witnessed the events in question. The court examined E. T. in the courtroom, without the jury present and, apparently, without respondent present. Tr. 87. No objection from respondent regarding his exclusion from this hearing appears on the record. The court ruled that the boy was competent to testify, a ruling to which respondent's counsel apparently objected. *Id.*, at 109–110. After direct and cross-examination of E. T., defense counsel moved that the court reconsider its previous ruling that the boy was competent to testify. The court declined to rule that he was incompetent. *Id.*, at 126–127.

Respondent's exclusion from E. T.'s competency hearing is not before us because the validity of respondent's absence from that hearing was never raised before the Kentucky Supreme Court. See Brief for Appellant in No. 84–SC–496–I (Ky. Sup. Ct.), pp. 14–17. Thus, not surprisingly, the majority opinion of the Kentucky Supreme Court refers solely to the competency hearing of the two girls.

[6] Under Kentucky law, deviate sexual intercourse means "any act of sexual gratification between persons not married to each other involving the sex organs of one person and the mouth or anus of another." Ky. Rev.

On appeal to the Supreme Court of Kentucky, respondent argued, among other things, that his exclusion from the competency hearing of the two girls denied him due process and violated his Sixth Amendment right to confront the witnesses against him. The Kentucky Supreme Court, by a divided vote, agreed that, under the Sixth Amendment of the Federal Constitution and under § 11 of the Bill of Rights of the Kentucky Constitution (the right "to meet the witnesses face to face"), respondent had an absolute right to be present at the competency hearing because the hearing "was a crucial phase of the trial." 712 S. W. 2d 939, 940 (1986). The court explained that respondent's trial "might not have taken place had the trial court determined that the children were not competent to testify." *Id.*, at 941. Two justices, however, dissented, concluding that respondent's right to confront the witnesses against him was not violated because respondent had the opportunity to assist counsel fully in cross-examining the two witnesses at trial. *Id.*, at 942–944.

We granted certiorari, 479 U. S. 1005 (1986), to determine whether respondent's constitutional rights were violated by his exclusion from the competency hearing.[7]

---

Stat. § 510.010(1) (1985). First-degree sodomy with a child under 12 is a Class A felony and conviction carries a minimum sentence of 20 years' imprisonment and a maximum sentence of life imprisonment. §§ 510.070(2) and 532.060.

[7] As an initial matter, respondent asks us to vacate our grant of certiorari because, in his view, the decision of the Kentucky Supreme Court rests on " 'separate, adequate, and independent grounds.' " Brief for Respondent 50, quoting *Michigan* v. *Long*, 463 U. S. 1032, 1041 (1983). We decline to do so. In *Michigan* v. *Long*, we explained that "when . . . a state court decision fairly appears . . . to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion," we shall assume that the state court believed that federal law compelled its conclusion. *Id.*, at 1040–1041. In this case, the Kentucky Supreme Court consistently referred to respondent's rights under the Sixth Amendment to the Federal Constitution as supporting its ruling. The court gave no indication that

## II

### A

The Sixth Amendment's Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." This right is secured for defendants in state as well as in federal criminal proceedings. *Pointer* v. *Texas*, 380 U. S. 400 (1965). The Court has emphasized that "a primary interest secured by [the Confrontation Clause] is the right of cross-examination." *Douglas* v. *Alabama*, 380 U. S. 415, 418 (1965). The opportunity for cross-examination, protected by the Confrontation Clause, is critical for ensuring the integrity of the factfinding process. Cross-examination is "the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis* v. *Alaska*, 415 U. S. 308, 316 (1974). Indeed, the Court has recognized that cross-examination is the "'greatest legal engine ever invented for the discovery of truth.'" *California* v. *Green*, 399 U. S. 149, 158 (1970), quoting 5 J. Wigmore, Evidence § 1367, p. 29 (3d ed. 1940). The usefulness of cross-examination was emphasized by this Court in an early case explicating the Confrontation Clause:

> "The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits . . . being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he

---

respondent's rights under § 11 of the Bill of Rights of the Kentucky Constitution were distinct from, or broader than, respondent's rights under the Sixth Amendment.

gives his testimony whether he is worthy of belief." *Mattox* v. *United States*, 156 U. S. 237, 242–243 (1895).[8]

See also *Kirby* v. *United States*, 174 U. S. 47, 53 (1899).

The right to cross-examination, protected by the Confrontation Clause, thus is essentially a "functional" right designed to promote reliability in the truth-finding functions of a criminal trial. The cases that have arisen under the Confrontation Clause reflect the application of this functional right. These cases fall into two broad, albeit not exclusive, categories: "cases involving the admission of out-of-court statements and cases involving restrictions imposed by law or by the trial court on the scope of cross-examination." *Delaware* v. *Fensterer*, 474 U. S. 15, 18 (1985) *(per curiam)*.

In the first category of cases, the Confrontation Clause is violated when "hearsay evidence [is] admitted as substantive evidence against the defendan[t]," *Tennessee* v. *Street*, 471 U. S. 409, 413 (1985), with no opportunity to cross-examine the hearsay declarant at trial, or when an out-of-court statement of an unavailable witness does not bear adequate indications of trustworthiness. See *Ohio* v. *Roberts*, 448 U. S. 56, 65–66 (1980). For example, in *Roberts*, we held that an out-of-court statement by an unavailable witness was sufficiently reliable to be admitted at trial, consistent with the Confrontation Clause, because defense counsel had engaged in full cross-examination of the witness at the preliminary hearing where the statement was made. *Id.*, at 70–73. In *California* v. *Green, supra,* the Court concluded that the Confrontation Clause was not violated by admitting a declarant's inconsistent out-of-court statement "as long as the de-

---

[8] One noted commentator has pointed out that the main purpose of confrontation "is to secure for the opponent the opportunity of cross-examination" (emphasis omitted), 5 J. Wigmore, Evidence § 1395, p. 150 (Chadbourn rev. 1974) (Wigmore), with an additional advantage being that "the judge and the jury are enabled to obtain the elusive and incommunicable evidence of a witness' deportment while testifying" (emphasis omitted). *Id.*, at 153.

clarant is testifying as a witness and subject to full and effective cross-examination" at the trial itself. 399 U. S., at 158.

The second category involves cases in which the opportunity for cross-examination has been restricted by law or by a trial court ruling. In *Davis* v. *Alaska, supra,* defense counsel was restricted by state confidentiality provisions from questioning a witness about his juvenile criminal record, although such evidence might have affected the witness' credibility. The Court held that the Confrontation Clause was violated because the defendant was denied the right "to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness." 415 U. S., at 318. Similarly, in *Delaware* v. *Van Arsdall*, 475 U. S. 673 (1986), defense counsel was precluded by the trial court from questioning a witness about the State's dismissal of a pending public drunkenness charge against him. The Court concluded: "By thus cutting off all questioning about an event . . . that a jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony," the trial court's ruling violated the defendant's rights under the Confrontation Clause. *Id.,* at 679.[9]

---

[9] The Court sometimes has referred to a defendant's right of confrontation as a "trial right." See *Barber* v. *Page*, 390 U. S. 719, 725 (1968); see also *California* v. *Green*, 399 U. S. 149, 157 (1970) ("right to 'confront' the witness at the time of trial"). In *Pennsylvania* v. *Ritchie*, 480 U. S. 39 (1987), a plurality of the Court interpreted the Clause to mean that the right of confrontation is designed simply "to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination." *Id.,* at 52. Thus, the plurality in *Ritchie* concluded that the constitutional error in *Davis* v. *Alaska*, 415 U. S. 308 (1974), was not that state law made certain juvenile criminal records confidential, but rather that the defense attorney had been precluded from asking questions about that criminal record *at trial*. 480 U. S., at 54. The personal view of the author of this opinion as to the Confrontation Clause is somewhat broader than that of the *Ritchie* plurality. Although he believes that "[t]here are cases, perhaps most of them, where simple questioning of a witness will satisfy the purposes of cross-examination," *id.,* at 62 (BLACK-

Although claims arising under the Confrontation Clause may not always fall neatly into one of these two categories, these cases reflect the Confrontation Clause's functional purpose in ensuring a defendant an opportunity for cross-examination. See *Lee* v. *Illinois*, 476 U. S. 530 (1986). Of course, the Confrontation Clause guarantees only "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware* v. *Fensterer*, 474 U. S., at 20 (emphasis in original). This limitation is consistent with the concept that the right to confrontation is a functional one for the purpose of promoting reliability in a criminal trial.

B

The Commonwealth argues that respondent's exclusion from the competency hearing of the two children did not violate the Confrontation Clause because a competency hearing is not "a stage of trial where evidence or witnesses are being presented to the trier of fact." Brief for Petitioner 22. Cf. *Gannett Co.* v. *DePasquale*, 443 U. S. 368, 394 (1979) (Burger, C. J., concurring). Distinguishing between a "trial" and a "pretrial proceeding" is not particularly helpful here, however, because a competency hearing may well be a "stage of trial." In this case, for instance, the competency hearing was held after the jury was sworn, in the judge's chambers, and in the presence of opposing counsel who asked questions

MUN, J., concurring), he also believes that there are cases in which a state rule that precludes a defendant from access to information before trial may hinder that defendant's opportunity for *effective* cross-examination at trial, and thus that such a rule equally may violate the Confrontation Clause. *Id.*, at 63–65.

His differences with the plurality in *Ritchie*, however, are not implicated in this case. As is demonstrated below, respondent's ability to engage in full cross-examination at trial was not affected by his exclusion from the competency hearing, nor was his opportunity to engage in *effective* cross-examination interfered with by his exclusion. Thus, under either the author's view or that of the plurality in *Ritchie*, there was no Confrontation Clause violation in this case.

of the witnesses.[10]  Moreover, although questions regarding the guilt or innocence of the defendant usually are not asked at a competency hearing, the hearing retains a direct relationship with the trial because it determines whether a key witness will testify.  Further, although the preliminary determination of a witness' competency to testify is made at this hearing, the determination of competency is an ongoing one for the judge to make based on the witness' actual testimony at trial.

Instead of attempting to characterize a competency hearing as a trial or pretrial proceeding, it is more useful to consider whether excluding the defendant from the hearing interferes with his opportunity for effective cross-examination. No such interference occurred when respondent was excluded from the competency hearing of the two young girls in this case.  After the trial court determined that the two children were competent to testify, they appeared and testified in open court.  At that point, the two witnesses were subject to full and complete cross-examination, and were so examined.  Tr. 38–58 (cross-examination of T. G.); id., at 71–84 (cross-examination of N. G.).  Respondent was present throughout this cross-examination and was available to assist his counsel as necessary.  There was no Kentucky rule of law, nor any ruling by the trial court, that restricted respondent's ability to cross-examine the witnesses at trial. Any questions asked during the competency hearing, which respondent's counsel attended and in which he participated, could have been repeated during direct examination and cross-examination of the witnesses in respondent's presence. See *California* v. *Green*, 399 U. S., at 159 ("[T]he inability to cross-examine the witness at the time he made his prior statement cannot easily be shown to be of crucial significance as long as the defendant is assured of full and effective cross-examination at the time of trial").

---

[10] Indeed, a competency hearing may take place in the middle of a trial, as did the hearing of E. T.  See n. 5, *supra*.

Moreover, the type of questions that were asked at the competency hearing in this case were easy to repeat on cross-examination at trial. Under Kentucky law, when a child's competency to testify is raised, the judge is required to resolve three basic issues: whether the child is capable of observing and recollecting facts, whether the child is capable of narrating those facts to a court or jury, and whether the child has a moral sense of the obligation to tell the truth. See *Moore* v. *Commonwealth*, 384 S. W. 2d 498, 500 (Ky. 1964) ("When the competency of an infant to testify is properly raised it is then the duty of the trial court to carefully examine the witness to ascertain whether she (or he) is sufficiently intelligent to observe, recollect and narrate the facts and has a moral sense of obligation to speak the truth"); *Capps* v. *Commonwealth*, 560 S. W. 2d 559, 560 (Ky. 1977); *Hendricks* v. *Commonwealth*, 550 S. W. 2d 551, 554 (Ky. 1977); see also *Thomas* v. *Commonwealth*, 300 Ky. 480, 481–482, 189 S. W. 2d 686, 686–687 (1945); Comment, An Overview of the Competency of Child Testimony, 13 No. Ky. L. Rev. 181, 184 (1986).[11] Thus, questions at a competency hearing usually are limited to matters that are unrelated to the basic issues of the trial. Children often are asked their names, where they go to school, how old they are, whether they know who the judge is, whether they know what a lie is, and whether they know what happens when one tells a lie. See Comment, The Competency Requirement for the Child Victim of Sexual Abuse: Must We Abandon It?, 40 U. Miami L. Rev. 245, 263, and n. 78 (1985); Comment, Defendants' Rights in Child Witness Competency Hearings: Establishing

_____

[11] Similar requirements for establishing competency to testify were set forth in *Wheeler* v. *United States*, 159 U. S. 523 (1895): "[T]here is no precise age which determines the question of competency. This depends on the capacity and intelligence of the child, his appreciation of the difference between truth and falsehood, as well as of his duty to tell the former." *Id.*, at 524. See generally 2 Wigmore §§ 505–507.

Constitutional Procedures for Sexual Abuse Cases, 69 Minn. L. Rev. 1377, 1381–1383, and nn. 9–11 (1985).[12]

In Kentucky, as in certain other States, it is the responsibility of the judge, not the jury, to decide whether a witness is competent to testify based on the witness' answers to such questions. *Whitehead* v. *Stith*, 268 Ky. 703, 709, 105 S. W. 2d 834, 837 (1937) (question of competency is one for court, not jury, and if court finds witness lacks qualification, "it commits a palpable abuse of its discretion" should it then permit witness to testify); *Payne* v. *Commonwealth*, 623 S. W. 2d 867, 878 (Ky. 1981); *Capps* v. *Commonwealth*, 560 S. W.

---

[12] Some States explicitly allow children to testify without requiring a prior competency qualification, while others simply provide that all persons, including children, are deemed competent unless otherwise limited by statute. See B. Battman & J. Bulkley, National Legal Resource Center for Child Advocacy and Protection, Protecting Child Victim/Witnesses: Sample Laws and Materials 43–44 (1986) (listing statutes) (Protecting Child Victim/Witnesses); Bulkley, Evidentiary and Procedural Trends in State Legislation and Other Emerging Legal Issues in Child Sexual Abuse Cases, 89 Dick. L. Rev. 645, 645 (1985). Some commentators have urged that children be allowed to testify without undergoing a prior competency qualification. See Protecting Child Victim/Witnesses, at 38 (proposing sample competency statute according children same rebuttable presumption of competency granted other witnesses); 2 Wigmore § 509, p. 719 ("it must be concluded that the sensible way is to put the child upon the stand to give testimony for what it may seem to be worth").

A number of States, however, mandate by statute that a trial judge assess a child's competency to testify on the basis of specified requirements. These usually include a determination that the child is capable of expression, is capable of understanding the duty to tell the truth, and is capable of receiving just impressions of the facts about which he or she is called to testify. See, *e. g.*, Ariz. Rev. Stat. Ann. § 12–2202 (1982); Ga. Code Ann. § 24-9-5 (1982); Idaho Code § 9–202 (Supp. 1987); Ind. Code § 34-1-14-5 (1986); Mich. Comp. Laws § 600.2163 (1986); Minn. Stat. § 595.02. Subd. 1(f) (Supp. 1987); N. Y. Crim. Proc. Law § 60.20 (McKinney 1981); Ohio Rev. Code Ann. § 2317.01 (1981); see Protecting Child Victim/Witnesses, at 45 (listing statutes). The recent reforms in some States of presuming the competency of young children and allowing juries to assess credibility at trial is not called into question by this opinion. We are concerned solely with those States that retain competency qualification requirements.

2d, at 560. See 2 Wigmore § 507, p. 714 (citing cases). In those States where the judge has the responsibility for determining competency, that responsibility usually continues throughout the trial.[13] A motion by defense counsel that the court reconsider its earlier decision that a child is competent may be raised after the child testifies on direct examination, see, *e. g.*, *In re R. R.*, 79 N. J. 97, 106, 398 A. 2d 76, 80 (1979) (at close of State's case, defense attorney moved that 4-year-old boy be declared incompetent on basis of actual testimony given by boy),[14] or after direct and cross-examination of the witness. See, *e. g.*, Reply Brief for Petitioner 12 ("If, during trial, there arises some basis for challenging the judge's competency determination, the judge may be asked to reconsider," referring to respondent's motion to that effect, Tr. 126–127). Moreover, appellate courts reviewing a trial judge's determination of competency also often will look at the full testimony at trial.[15]

---

[13] See, *e. g.*, *Litzkuhn* v. *Clark*, 85 Ariz. 355, 360, 339 P. 2d 389, 392 (1959) ("[I]t is the duty of the trial judge who has permitted a child to be sworn as a witness, at any time to change his mind upon due occasion therefor, to remove the child from the stand and to instruct the jury to disregard his testimony"); *Davis* v. *Weber*, 93 Ariz. 312, 317, 380 P. 2d 608, 611 (1963) ("The right of a trial judge to change his mind [regarding a child's competency] can hardly be denied").

[14] California recently amended its statute governing the disqualification of incompetent witnesses to provide explicitly: "In any proceeding held outside the presence of a jury, a court may reserve challenges to the competency of a witness until the conclusion of the direct examination of that witness." Cal. Evid. Code Ann. § 701(b) (West Supp. 1987).

[15] See, *e. g.*, *Payne* v. *Commonwealth*, 623 S. W. 2d 867, 878 (Ky. 1981) (review of children's testimony at trial reveals that trial court's ruling of competency was appropriate); *Hendricks* v. *Commonwealth*, 550 S. W. 2d 551, 554 (Ky. 1977) ("Not only did the trial judge determine that the children were competent to testify, but the transcript of the testimony of these children clearly demonstrates their intellectual ability to observe, recollect and narrate the facts and to recognize their moral obligation to tell the truth"); see also *In re R. R.*, 79 N. J. 97, 113, 398 A. 2d 76, 84 (1979) ("[I]n determining the propriety of the trial judge's determination, an appellate court need not limit its view to the responses given by the witness during

In this case both T. G. and N. G. were asked several background questions during the competency hearing, as well as several questions directed at what it meant to tell the truth. Some of the questions regarding the witnesses' backgrounds were repeated by the prosecutor on direct examination, while others—particularly those regarding the witnesses' ability to tell the difference between truth and falsehood—were repeated by respondent's counsel on cross-examination. At the close of the children's testimony, respondent's counsel, had he thought it appropriate, was in a position to move that the court reconsider its competency rulings on the ground that the direct and cross-examination had elicited evidence that the young girls lacked the basic requisites for serving as competent witnesses.[16]  Thus, the critical tool of cross-examination was available to counsel as a means of establishing that the witnesses were not competent to testify, as well as a means of undermining the credibility of their testimony.

Because respondent had the opportunity for full and effective cross-examination of the two witnesses during trial, and because of the nature of the competency hearing at issue in this case, we conclude that respondent's rights under the Confrontation Clause were not violated by his exclusion from the competency hearing of the two girls.[17]

---

the *voir dire* examination; instead, it can consider the entire record—including the testimony in fact given by the witness under oath—in order to arrive at its decision").

[16] Respondent's counsel, in fact, did move for reconsideration of the court's ruling on the competency of E. T. after that young boy had testified and had been subjected to cross-examination.  See n. 5, *supra*.

[17] We note once again that the Kentucky Supreme Court held that respondent's confrontation rights were violated because the competency hearing was a "crucial phase of the trial."  712 S. W. 2d, at 940.  It is true that the hearing was crucial in the sense that respondent may not have been convicted had the two girls been found incompetent to testify.  Nevertheless, the question whether a particular proceeding is critical to the outcome of a trial is not the proper inquiry in determining whether the Confrontation Clause has been violated.  The appropriate question is whether there has been any interference with the defendant's opportunity

## III

Respondent argues that his rights under the Due Process Clause of the Fourteenth Amendment were violated by his exclusion from the competency hearing.[18]  The Court has assumed that, even in situations where the defendant is not actually confronting witnesses or evidence against him, he has a due process right "to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." *Snyder* v. *Massachusetts*, 291 U. S. 97, 105–106 (1934).  Although the Court has emphasized that this privilege of presence is not guaranteed "when presence would be useless, or the benefit but a shadow," *id.*, at 106–107, due process clearly requires that a defendant be allowed to be present "to the extent that a fair and just hearing would be thwarted by his absence," *id.*, at 108.  Thus, a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure.

We conclude that respondent's due process rights were not violated by his exclusion from the competency hearing in this case.  We emphasize, again, the particular nature of the competency hearing.  No question regarding the substantive testimony that the two girls would have given during trial

---

for effective cross-examination.  No such interference occurred in this case.  Of course, the fact that a stage in the proceeding is critical to the outcome of a trial may be relevant to due process concerns.  Even in that context, however, the question is not simply whether, "but for" the outcome of the proceeding, the defendant would have avoided conviction, but whether the defendant's presence at the proceeding would have contributed to the defendant's opportunity to defend himself against the charges. See *infra*, Part III.

[18] Although respondent perhaps could have been more artful in presenting his due process claim to the Kentucky Supreme Court as clearly founded on the Fourteenth Amendment, he did raise a due process claim to that court, see Brief for Appellant in No. 84-SC-496-I (Ky. Sup. Ct.), pp. 14–17, and the claim therefore is properly before us.

was asked at that hearing. All the questions, instead, were directed solely to each child's ability to recollect and narrate facts, to her ability to distinguish between truth and falsehood, and to her sense of moral obligation to tell the truth.[19] Thus, although a competency hearing in which a witness is asked to discuss upcoming substantive testimony might bear a substantial relationship to a defendant's opportunity better to defend himself at trial, that kind of inquiry is not before us in this case.[20]

[19] During the competency hearing of E. T., the judge, the prosecutor, and respondent's counsel asked the boy several questions regarding the substance of his testimony. Tr. 91–101. As noted above, however, see n. 5, *supra*, respondent's exclusion from E. T.'s competency hearing is not before us.

[20] Counsel for the Commonwealth acknowledged that if a competency hearing "were to exceed its normal scope," that would "begi[n] to bear a substantial relation to [a defendant's] opportunity to defend." Tr. of Oral Arg. 9; see also *State* v. *Howard*, 57 Ohio App. 2d 1, 4–5, 385 N. E. 2d 308, 312–313 (1978) (defendant's presence bears reasonably substantial relation to defense when witnesses give testimony in *in-camera* hearing identifying defendant as assailant). Although, as noted above, most competency hearings do not focus on substantive testimony, it is not impossible that questions related to substantive testimony could be asked. See Comment, Defendants' Rights in Child Witness Competency Hearings: Establishing Constitutional Procedures for Sexual Abuse Cases, 69 Minn. L. Rev. 1377, 1384 (1985) (emphasis on testing a child's memory "suggests that a judge may inquire about the actual sexual assault"); see n. 19, *supra*. But see *Moll* v. *State*, 351 N. W. 2d 639, 643 (Minn. App. 1984) ("[T]he trial court has broad discretion as to the type of question to be put to the child during this preliminary examination, but should not elicit from the child the anticipated testimony concerning the alleged offense, recognizing the suggestibility of young children").

Where the competency hearing bears a substantial relationship to the defendant's opportunity to defend, a court must then balance the defendant's role in assisting in his defense against the risk of identifiable and substantial injury to the specific child witness. See Brief for American Psychological Association as *Amicus Curiae* 15–26 (noting that intuitive view that child victims of sexual abuse are particularly vulnerable in legal proceedings may not be correct for all children).

Respondent has given no indication that his presence at the competency hearing in this case would have been useful in ensuring a more reliable determination as to whether the witnesses were competent to testify. He has presented no evidence that his relationship with the children, or his knowledge of facts regarding their background, could have assisted either his counsel or the judge in asking questions that would have resulted in a more assured determination of competency. On the record of this case, therefore, we cannot say that respondent's rights under the Due Process Clause of the Fourteenth Amendment were violated by his exclusion from the competency hearing.[21] As was said in *United States* v. *Gagnon*, 470 U. S. 522, 527 (1985) *(per curiam)*, there is no indication that respondent "could have done [anything] had [he] been at the [hearing] nor would [he] have gained anything by attending."[22]

---

[21] Contrary to the dissent's charge, see *post*, at 754, we do not address the question whether harmless-error analysis applies in the situation where a defendant is excluded from a critical stage of the proceedings in which his presence would contribute to the fairness of the proceeding. In this case, respondent simply has failed to establish that his presence at the competency hearing would have contributed to the fairness of the proceeding. He thus fails to establish, as an initial matter, the presence of a constitutional deprivation.

[22] Respondent also argues that his Sixth Amendment right to effective assistance of counsel was violated by his inability to consult with counsel during the competency hearing. Brief for Respondent 28–32. Respondent acknowledges that this argument was not raised below, *id.*, at 28, n. 25, but he argues that, as the prevailing party, he may assert any ground in support of his judgment. See *Dandridge* v. *Williams*, 397 U. S. 471, 475, n. 6 (1970). The Court has noted, however, that it is "the settled practice of this Court, in the exercise of its appellate jurisdiction, that it is only in exceptional cases, and then only in cases coming from the federal courts, that it considers questions urged by a petitioner or appellant not pressed or passed upon in the courts below." *McGoldrick* v. *Compagnie Generale Transatlantique*, 309 U. S. 430, 434 (1940); see also *Heckler* v. *Campbell*, 461 U. S. 458, 468–469, n. 12 (1983) (Court will consider ground not presented to federal court below only "in exceptional cases"). Because

The judgment of the Supreme Court of Kentucky is reversed.

*It is so ordered.*

JUSTICE MARSHALL, with whom JUSTICE BRENNAN and JUSTICE STEVENS join, dissenting.

The Court today defines respondent's Sixth Amendment right to be confronted with the witnesses against him as guaranteeing nothing more than an opportunity to cross-examine these witnesses *at some point* during his trial. The Confrontation Clause protects much more. In this case, it secures at a minimum respondent's right of presence to assist his lawyer at the in-chambers hearing to determine the competency of the key prosecution witnesses. Respondent's claim under the Due Process Clause of the Fourteenth Amendment, though similar in this testimonial context to his claim under the Confrontation Clause, was not addressed by the court below and should not be decided here. Were this issue properly before the Court, however, I would again dissent. Due process requires that respondent be allowed to attend every critical stage of his trial.

I

The Sixth Amendment guarantees the criminal defendant "the right . . . to be confronted with the witnesses against him." The text plainly envisions that witnesses against the accused shall, as a rule, testify *in his presence*. I can only marvel at the manner in which the Court avoids this manifest import of the Confrontation Clause. Without explanation, the Court narrows its analysis to address *exclusively* what is accurately identified as simply *a* primary interest the Clause was intended to secure: the right of cross-examination. See *ante*, at 736 (citing *Douglas* v. *Alabama*, 380 U. S. 415, 418

the judgment here is that of a state court, and because we do not believe that respondent's claim of deprival of the effective assistance of counsel qualifies as an exceptional case, we decline to review this claim.

(1965)). This use of analytical blinders is undoubtedly convenient. Since respondent ultimately did receive an opportunity for full cross-examination of the witnesses in his presence, the narrowly drawn standard enables the Court to conclude with relative ease that respondent's confrontation rights were not violated, see *ante*, at 740 and 744, even though the in-chambers competency hearing admittedly was, in this case, a "crucial" phase of respondent's trial from which he was physically excluded. *Ante*, at 744–745, n. 17.

Although cross-examination may be a primary means for ensuring the reliability of testimony from adverse witnesses, we have never held that standing alone it will suffice in every case. It is true that we have addressed in some detail the Confrontation Clause as it pertains to the admission of out-of-court statements, *e. g., Ohio* v. *Roberts*, 448 U. S. 56 (1980); *California* v. *Green*, 399 U. S. 149 (1970); and restrictions on the scope of cross-examination, *e. g., Davis* v. *Alaska*, 415 U. S. 308 (1974). But these cases have arisen in contexts in which the defendants' right to be present during the testimony was never doubted, thus making the Court's categorical analysis, see *ante*, at 737–738, largely beside the point. Not until today has this Court gone so far as to substitute a defendant's subsequent opportunity for cross-examination for his right to confront adverse witnesses in a prior testimonial proceeding. Rather, the Court has taken care *not* to identify the right of cross-examination as the exclusive interest protected by the Confrontation Clause. That right is simply among those "included in" the defendant's broad right to confront the witnesses against him. *Pointer* v. *Texas*, 380 U. S. 400, 404 (1965). Though "[c]onfrontation means more than being allowed to confront the witness physically," *Davis* v. *Alaska, supra*, at 315, it must by implication encompass the right of physical presence at any testimonial proceeding. As this Court has previously recognized, "it is this literal right to 'confront' the witness at the time of trial that forms the core of the values furthered

by the Confrontation Clause," *California* v. *Green, supra,* at 157, guaranteeing the accused an opportunity to compel the witness to meet him "face to face" before the trier of fact. *Mattox* v. *United States,* 156 U. S. 237, 242 (1895); see also *Ohio* v. *Roberts, supra,* at 63, and nn. 5, 6.

Physical presence of the defendant enhances the reliability of the factfinding process. Under Kentucky law, in a witness competency proceeding the trial judge must assess the witness' ability to observe and recollect facts with accuracy and with committed truthfulness. See *ante,* at 741. This determination necessarily requires the judge to make independent factual findings against which can be measured the accuracy of the witness' testimony at the competency proceeding, whether addressing facts such as the witness' name, age, and relation to the defendant, or events concerning the alleged offense itself. These findings are critical to the trial judge's assessment of the witness' competency to testify, and they often concern matters about which the defendant, and not his counsel, possesses the knowledge needed to expose inaccuracies in the witness' answers. Having the defendant present ensures that these inaccuracies are called to the judge's attention immediately—*before* the witness takes the stand with the trial court's *imprimatur* of competency and testifies in front of the jury as to the defendant's commission of the alleged offense. It is both functionally inefficient and fundamentally unfair to attribute to the defendant's attorney complete knowledge of the facts which the trial judge, in the defendant's involuntary absence, deems relevant to the competency determination. That determination, which turns entirely on the trial court's evaluation of the witness' statements, cannot be made out of the physical presence of the defendant without violating the basic guarantee of the Confrontation Clause:

"[A] fact which can be primarily established only by witnesses cannot be proved against an accused . . . except by witnesses who confront him at the trial, upon whom

he can look while being tried, whom he is entitled to cross-examine, and whose testimony he may impeach in every mode authorized by the established rules governing the trial or conduct of criminal cases. The presumption of innocence of an accused attends him throughout the trial and has relation to every fact that must be established in order to prove his guilt beyond reasonable doubt." *Kirby* v. *United States*, 174 U. S. 47, 55 (1899).

But more than the reliability of the competency determination is at stake in this case. As we recently observed in *Lee* v. *Illinois*, 476 U. S. 530 (1986), the constitutional guarantee of the right of confrontation serves certain "symbolic goals" as well:

"[T]he right to confront and cross-examine adverse witnesses contributes to the establishment of a system of criminal justice in which the perception as well as the reality of fairness prevails. To foster such a system, the Constitution provides certain safeguards to promote to the greatest possible degree society's interest in having the accused and accuser engage in open and even contest in a public trial. The Confrontation Clause advances these goals by ensuring that convictions will not be based on the charges of unseen and unknown—and hence unchallengable—individuals." *Id.*, at 540.

This appearance of fairness is woefully lacking in the present case. The Commonwealth did not request that respondent be excluded from the competency hearing. The trial judge raised this issue *sua sponte*, and only the personal protestations of respondent, a recent Cuban immigrant whose fluency in the English language was limited, preserved the issue for appeal.[1] Neither the prosecuting attorney nor the trial

---

[1] The relevant portion of the transcript of the in-chambers hearing reads in its entirety:

"Mr. Rogers [the prosecutor]: We're dealing here with seven and eight-year-old children and I think as a preliminary matter maybe the Court

judge articulated *any* reason for excluding him. From this defendant's perspective, the specter of the judge, prosecutor, and court-appointed attorney conferring privately with the key prosecution witnesses was understandably upsetting. From a constitutional perspective, the unrequested and unjustified exclusion constitutes an intolerable subversion of the symbolic functions of the Confrontation Clause.[2]

---

should inquire of them to determine whether or not you believe that they're competent to testify. Of course, that would still be up to the jury to determine, I understand, but I think you do have to make a preliminary decision.

"The Court: Okay. Let's bring them in one at a time. I think we need to get Mr. Stincer back in the courtroom while we're interviewing these children in chambers.

"Mr. Embry [respondent's attorney]: We don't have any problem with that, Judge. Sergio, we're going to talk to the children, not about the case really but just to see if they're old enough to understand the difference between telling a lie and telling the truth, that sort of thing and I think they'll have you set *[sic]* outside. I will tell you what happens in a little bit.

"Mr. Stincer: (phonetic).

"Mr. Embry: I guess what he's saying is, Judge, he wishes to be here. Of course, I think you'd probably have the right to handle it.

"The Court: I think they're going to have to be interviewed with counsel present only. I think I can exclude everyone.

"Mr. Embry: Right, Judge. I just—

"The Court: I'll let counsel be present.

"Mr. Embry: To protect my client, I'll ask that he be allowed to stay.

"The Court: Fine. Overruled. Let's bring one of them in." App. 1–2.

[2] The reality and appearance of fairness are fully protected by the succinct holding of the Kentucky Supreme Court below:

"A criminal defendant has the right to attend hearings to determine the competency of witnesses. The trial court's determination of whether the prosecuting witnesses could testify was pivotal. Because the children's testimony was sine qua non to the prosecution's case, appellant's trial might not have taken place had the trial court determined that the children were not competent to testify.

"Although this court recognizes the problems and pressures encountered when dealing with child witnesses, when a defendant is placed on trial by the state for criminal conduct he is entitled to be present and to assist his counsel at hearings to determine the competency of witnesses against him." 712 S. W. 2d 939, 941 (1986).

Had respondent invoked his Sixth Amendment right of self-representation and appeared *pro se,* there would be little doubt that he would have been entitled to attend the competency hearing and cross-examine the child witnesses.

> "The Sixth Amendment . . . grants to the accused personally the right to make his defense. It is the accused, not counsel, who must be 'informed of the nature and cause of the accusation,' who must be 'confronted with the witnesses against him,' and who must be accorded 'compulsory process for obtaining witnesses in his favor.'" *Faretta* v. *California,* 422 U. S. 806, 819 (1975).

A defendant who represents himself is "entitled to as much latitude in conducting his defense as we have held is enjoyed by counsel vigorously espousing a client's cause." *In re Little,* 404 U. S. 553, 555 (1972). Given these well-founded constitutional pronouncements, today's decision may create for the criminal defendant a difficult dilemma: a choice between continuing to exercise his right to assistance of counsel, thereby being excluded from the competency hearing, and appearing *pro se* so that he may be in attendance at this critical stage of his trial. This Court has on occasion held that a forced choice between two fundamental constitutional guarantees is untenable, see *Simmons* v. *United States,* 390 U. S. 377, 394 (1968) (defendant's testimony in support of motion to suppress evidence under the Fourth Amendment may not, under the Fifth Amendment, be admitted over objection at trial as evidence of defendant's guilt). Today's decision neglects the serious question whether this choice is constitutionally defensible.

## II

Respondent's right to be present at the competency hearing does not flow exclusively from the Sixth Amendment. The confrontation right attaches in this context because the competency proceeding was testimonial in nature. As the

Court acknowledges, however, respondent also claims a right independently grounded in the Fourteenth Amendment's Due Process Clause to attend *any* trial proceeding in which his presence "has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge," *Snyder* v. *Massachusetts*, 291 U. S. 97, 105–106 (1934). *Ante*, at 745; see also *Faretta, supra,* at 819, n. 15. That the competency hearing in this case bore a reasonably substantial relation to respondent's defense can hardly be doubted. As the Court correctly acknowledges, "although questions regarding the guilt or innocence of the defendant usually are not asked at a competency hearing, the hearing retains a direct relationship with the trial because it determines whether a key witness will testify." *Ante*, at 740.

Reviewing the transcript of the competency hearing, the Court concludes that respondent's due process rights were not violated because no question regarding the substantive testimony of the witnesses was asked and respondent has given no indication that his presence would have assisted in achieving more reliable competency determinations. *Ante*, at 745–747. But the propriety of the decision to exclude respondent from this critical stage of his trial should not be evaluated in light of what transpired in his absence. To do so transforms the issue from whether a due process violation has occurred into whether the violation was harmless. Neither issue was addressed by the court below. More importantly, however, the Court, citing a single *per curiam* decision, *United States* v. *Gagnon*, 470 U. S. 522 (1985), unfairly shifts the burden of proving harm from this constitutional deprivation to the excluded criminal defendant, who was in no way responsible for the error and is least able to demonstrate what would have occurred had he been allowed to attend. The Fourteenth Amendment does not permit this presumption that the involuntary exclusion of a defendant from a critical stage of his trial is harmless.

I respectfully dissent.