THE STATE OF OHIO, APPELLEE, *v.* BROWN, APPELLANT.

(No. L-87-289—Decided June 24, 1988.)

*Gary Byers,* assistant prosecuting attorney, for appellee.

*Thomas A. Sobecki,* for appellant.

*Per Curiam.* This is an appeal from the Lucas County Court of Common Pleas. Appellant, Carl Brown, was convicted of gross sexual imposition in violation of R.C. 2907.05. In support of his appeal, Brown asserts two assignments of error which will be dealt with in turn. Assignment of Error No. I reads as follows:

"I. Appellant's Sixth Amendment right to confront the witnesses against him and his Fourteenth Amendment right to due process were violated by his forced absence from the competency hearing held concerning witness Marquita Bone."

The victim in this case was a six-year-old girl. Prior to her testifying against appellant, the trial court judge held an in-camera hearing into the question of the child's competency to testify. Counsel for appellant and the state were present; the appellant himself was not.

Appellant argues that his constitutional right to confront the witness and his due process rights were denied by his forced absence from this hearing. Appellant cites *Kentucky* v. *Stincer* (1987), 482 U.S. 730, in support of his position. In the *Stincer* case, the United States Supreme Court held that there was no violation of the Confrontation Clause or the Due Process Clause where the defendant was excluded from a competency hearing during which *no substantive testimony* was given by the young prospective witnesses.

Appellant alleges that in the instant case substantive testimony *was*

adduced at the competency hearing and brings to the court's attention the following exchange between the judge, the prosecutor and the six-year-old witness:

"THE COURT: Okay. All right. Who is that that you have in your arms there?

"A. Girl.

"THE COURT: A girl. Oh, okay. Is that your doll?

"A. (Nodded affirmatively).

"THE COURT: Is it. What's her name?

"A. Nickie.

"THE COURT: Nickie. That's a cute name.

"MR. BYERS: Where did you get it. Who gave it to you?

"A. You.

"THE COURT: Okay. So that's why Mr. Byers is such a nice guy.

"MR. CARDER: Going to object to that.

"MR. BYERS: But that's just to play with today, is that right?

"A. (Nodded affirmatively).

"THE COURT: Just to play with today. All right. Well, I don't think I have anymore [sic] questions I want to ask you. * * *"

This court finds nothing substantive in this discussion. The mere fact that the judge asked the child about a doll which was later used to aid her in her substantive testimony does not make this in-camera exchange substantive testimony. We find appellant's first assignment of error not well-taken.

Appellant's second assignment of error states:

"II. The trial court's finding of guilty as to Count I was unsupported by the evidence and against the manifest weight of the evidence."

Appellant, in this assignment of error, alleges that the state failed to prove beyond a reasonable doubt that he had sexual contact with the victim.

Sexual contact, a required element of gross sexual imposition, R.C. 2907.05, is defined in R.C. 2907.01(B):

"As used in sections 2907.01 to 2907.37 of the Revised Code:

"* * *

"(B) 'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

The victim's testimony concerning appellant's conduct was as follows:

"Q. (By Mr. Byers) Can you tell what happened when he called you into the house? What did he do?

"A. Took me to the bathroom, shut the door.

"Q. You say he went in the booth?

"A. Bathroom.

"Q. The bathroom, okay. And were you with him?

"A. (Nodded affirmatively).

"Q. Yes. And what did he do, shut the door, did you say?

"A. (Nodded affirmatively).

"Q. Tell Judge Knepper what happened then, what did he do?

"A. Took my clothes off and —

"Q. What did he do with your clothes?

"A. Pulled them down.

"* * *

"Q. And what did he do then. Will you tell Judge Knepper?

"A. Did it to me.

"Q. He did it to you?

"A. (Nodded affirmatively).

"Q. Did he touch you?

"MR. CARDER: Objection.

"THE COURT: Overruled.

"A. With a towel.

"* * *

"Q. Okay. Can you show me, did he touch you? Can you show us on the dolly where he touched you?

"A. Right there.

"* * *

"Q. Okay. Would you go ahead and point to it and touch it, please, just on the dolly just so we can know?

"A. (Indicated).

"Q. Is that between your legs?

"A. (Nodded affirmatively).

"Q. Okay. And did he touch you anywhere else?

"A. (Indicated negatively).

"Q. Okay. How long did this go on?

"A. (Witness shrugged.)

"Q. Was it a long time, a short time?

"A. Long time.

"Q. It seemed like a long time. Was anyone else in the bathroom with you?

"A. (Indicated negatively).

"Q. Okay. Did you have your underpants on at that time?

"A. (Nodded affirmatively).

"Q. Yes or no?

"A. (Nodded affirmatively).

"Q. Do you remember? You had your underpants on, and this dolly has some underpants on too, is that right?

"A. (Nodded affirmatively).

"Q. And can you show the Judge specifically where he touched you?

"A. Right there.

"Q. Okay. Between your legs right there?

"A. (Nodded affirmatively).

"Q. And that went on for awhile?

"A. (Nodded affirmatively).

"Q. Now, did you ever start to cry while this was happening?

"A. (Indicated negatively).

"Q. You have to speak. Do you remember crying?

"A. Hmm?

"Q. You remember crying at all or doing anything like that?

"A. I didn't cry.

"Q. You didn't cry. Okay. Will you tell the Judge what happened then? What did he do when he was in the bathroom?

"A. Took my clothes off.

"Q. Took your clothes off. And then what did he do? Pardon me?

"A. Did it to me.

"Q. Okay. What do you mean by that? Did he take off any of his clothes?

"A. (Nodded affirmatively).

"Q. You're shaking your head yes?

"A. (Nodded affirmatively).

"Q. You have to speak again, okay.

"MR. CARDER: Objection, Your Honor.

"THE COURT: Overruled.

"Q. (By Mr. Byers) Did he take off any of his clothes?

"A. Yeah.

"Q. Okay. And what clothes did he take off?

"A. Pants.

"Q. Okay. Why don't you hold the dolly a second, okay?

"Now, we got another dolly here. This is a man dolly, okay. And can you show us what clothes he took off on this dolly? Let me hold the girl dolly, and why don't you take off what clothes he took off, okay, on that dolly. Why don't you go ahead and do that?

"A. (Indicated).

"Q. Did he take them all the way off or part of the way off, his pants?

"A. All the way off.

"Q. Why don't you do that with the dolly, okay?

"And did he have them pulled down all the way or part of the way, or all the way off?

"A. All the way.

"Q. Can you take the girl dolly and pretend that the girl dolly was you. Can you show us what he did. Show us what he did with those two dollies, okay?

"A. (Indicated).

"Q. Went like that and touched you?

"A. (Nodded affirmatively).

"Q. Did you have your underpants on at that time?

"A. (Nodded affirmatively).

"Q. You did. Are you sure about that?

"A. (Nodded affirmatively).

"Q. Okay. Did he have any underpants on at that time or could you see — could you see his private areas?

"A. Hmm?

"Q. Could you see his private areas?

"A. (Indicated negatively).

"Q. Okay. Did he rub up against you though like you showed with the dollies?

"A. (Nodded affirmatively).

"Q. Okay. Let me take this back. We'll pull these pants up, okay. These dollies, they help us explain what happened, okay.

"Now, what happened then, can you tell Judge Knepper?

"A. I got out and it was —

"Q. You got what?

"A. I came out — I came out of the bathroom."

We find that the conduct described by the victim clearly satisfies the sexual contact definition set forth above. Sexual contact has been found on evidence of less intrusive actions. See, *e.g., State* v. *Young* (Feb. 12, 1986), Hamilton App. No. C-850438, unreported, where the female victim's breast was touched through her bra; *State* v. *Griswold* (Mar. 20, 1987), Lucas App. No. L-85-333, unreported, where the victim was forced to sit on the defendant's lap and move up and down; and *State* v. *Curliss* (Sept. 12, 1986), Sandusky App. No. S-86-1, unreported, where the defendant reached under the victim's skirt and slip and touched her thigh.

Accordingly, we find appellant's second assignment of error to be not well-taken.

On consideration whereof, the court finds that the defendant was not prejudiced or prevented from having a fair trial, and the judgment of the Lucas County Court of Common Pleas is affirmed. Costs assessed against appellant.

*Judgment affirmed.*

CONNORS, HANDWORK and GLASSER, JJ., concur.