## State v. Phillips
*[Cite as 2 AOA 101]*

*Case No. 11576*
*Montgomery County, (2nd)*
*Decided April 16, 1990*

*Evid. R. 601(A)*

*Carley Ingram, Assistant Prosecuting Attorney, 41 N. Perry Street, Dayton, Ohio 45402, Attorney for Plaintiff-Appellee.*

*Harry G. Beyoglides, Jr., Suite 201, 345 W. Second Street, Dayton, Ohio 45402, Attorney for Defendant-Appellant.*

WOLFF, P.J.

Jonathan L. Phillips was found guilty of two counts of rape and one count of gross sexual imposition involving his six year old niece, Tiffannie Ruble, and one count of gross sexual imposition involving his ten year old niece, Amanda Ruble. Phillips was sentenced concurrently on all counts, resulting in a 5 - 25 year sentence. On appeal, Phillips advances three assignments of error.

I. THE TRIAL COURT PREJUDICED THE DEFENDANT BY VIOLATING HIS CONSTI-TUTIONAL RIGHTS CONTAINED IN THE SIXTH AND FOURTEENTH AMENDMENTS.

The assignment relates to the trial court's *voir dire* examination of Tiffannie and Amanda as to their competency to testify. The girls were examined in chambers by the trial judge and the prosecuting attorney. Defense counsel was present but the record fails to reflect that he participated in the examination, prompting Phillips to claim on appeal that the trial court denied him his Sixth Amendment right to confront his accusers. Phillips also contends that the trial court's permitting the prosecutor to examine the girls demonstrates that the trial court abdicated its responsibility to determine the competency question.

The record reflects neither a request by defense counsel to participate, nor an objection by defense counsel to the prosecutor's questioning the girls, nor an objection to not being permitted to participate. On appeal, Phillips acknowledges that defense counsel's non-participation in the *voir dire* examination must amount to plain error to qualify for appellate redress.

Although it is the exclusive province of the trial court to examine a child as to competency, *State v. Wilson* (1952), 156 Ohio St 525 at 529, the trial court permitted the prosecutor to examine the girls. We have examined the transcript of the *voir dire* examination, and conclude that the prosecutor's questions were unremarkable and along the lines of what we would expect the trial court itself to have asked. Furthermore, the record simply fails to establish the defense counsel would have been forbidden to question the girls had he asked to do so. Finally, the record lacks even the suggestion that by permitting the prosecutor to question the girls, the trial court abdicated its responsibility to itself decide whether the girls were competent to testify.

In *State v. Craft* (1977), 52 Ohio App. 2d 1, Judge Black had this to say about plain error:

"How do we distinguish between a waived error and a plain error? More precisely, for this case, what are the guidelines to determine what prejudicial errors will or will not be deemed waived as a matter of law by defendant's failure to object at the trial level? Crim. R. 52(B) refers to "errors or defects affecting substantial rights," but this is not definitive because many substantial rights may be waived by inaction."

\* \* \* \* \*

"A review of Ohio, other states, and federal cases leads to the conclusion that the decisions

have been made on a case by case basis, and that there are no "hard and fast classifications in either the application of the principle [recognizing plain error] or the use of a descriptive title." 3 Wright, Federal Practice and Procedure, Section 856, at n. 86 (1969). Wright, *supra*, at page 373, suggests that the concept is one which "appellate courts find impossible to define, save that they know it when they see it."

\* \* \* \* \*

"We conclude that plain error may be identified as obvious error prejudicial to a defendant, neither objected to nor affirmatively waived by him, which involves a matter of great public interest having substantial adverse impact on the integrity of and the public's confidence in judicial proceedings. The error must be obvious on the records, palpable, and fundamental, and in addition it must occur in exceptional circumstances where the appellate court acts in the public interest because the error affects "the fairness, integrity or public reputation of judicial proceedings." *United States v. Atkinson* (1936), 297 U.S. 157, at 160. The interest to be advanced is "the rule of law." This is a government of laws and not of men, even judges."

Although we do not necessarily approve the trial court's permitting the prosecutor to question the girls, its doing so strikes us as innocuous. It does not appear from the record that the trial court forbade questioning by defense counsel, but only that it did not invite defense counsel to examine. The record does not reflect an abdication by the trial court of its duty to decide the competency issue. The *voir dire* examination as conducted by the trial court does not warrant a plain error label.

We also find support for this conclusion in *Kentucky v. Stincer* (1987), 107 S.Ct. 2658 at 2666.

Because respondent had the opportunity for full and effective cross-examination of the two witnesses during trial, and because of the nature of the competency hearing at issue in this case, we conclude that respondent's rights under the Confrontation Clause were not violated by his exclusion from the competency hearing of the two girls.

As Phillips notes, the issue in *Stincer* was whether the confrontation clause was violated when the accused was excluded from a competency hearing in which his counsel participated. Nevertheless, *Stincer* does observe that a competency determination made after a competency hearing is not etched in stone, that the child witness can be cross-examined as to competency during the trial itself, and that the

trial court can be asked during the trial itself to reconsider its competency determination. There was no restriction at trial on Phillips' ability to cross-examine the girls as to their competency.

The first assignment is overruled.

II.

### THE DEFENDANT'S CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED.

The second assignment assumes the failure of the first, and contends that Phillips' trial counsel was ineffective in not insisting upon cross-examining the girls at the voir dire examination, and in not objecting to their testimony at trial on competency grounds.

The two-prong test for ineffective assistance of counsel is found in *Strickland v. Washington* (1984), 466 U.S. 668 at 687:

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

In our judgment, Phillips had not demonstrated that his trial counsel was not functioning as the counsel guaranteed him by the Constitution.

*Voir dire* as to competency being the province of the trial court, we are hard pressed to find fault with defense counsel's not insisting upon a right of cross-examination. This is so even though the prosecutor was permitted to examine because, as we have noted, the prosecutor's questions were unremarkable and along the lines of what we would have expected the trial court to ask. Appellate scrutiny of trial counsel's performance must be highly deferential. *Id.* at 689. It may well be that Phillips' trial counsel had a strategic reason for not insisting upon cross-examination of the girls at the *voir dire* hearing but whether or not that is so, the record demonstrates no constitutional ineffectiveness in his not doing so.

We likewise find no ineffectiveness in trial counsel's failure to object at trial on competency grounds to the girls' testimony. On appeal, Phillips does not refer to the record to support his argument that trial counsel was derelict in failing to object to the girls' testimony on competency grounds. Our examination of their testimony reveals no definitive basis for an objection based

on lack of competency. Indeed, Dr. Gregory Ramey, a psychologist who treated the girls after their revelations about Phillips' conduct toward them, testified at trial prior to the girls' taking the stand as follows:

"Q. After seeing these two girls for the time that you have, have you noticed any mental impairment, disease of the mind, which would prevent these two girls to accurately recall or accurately remember or failure to accurately recall or failure to accurately remember or failure to accurately verbalize any event that happened three or four months in the past?"

"A. Well, an important factor to consider is the age of both of the children, particularly Tiffannie. Both youngsters do have some emotional difficulties and continue to exhibit such difficulties to this date. That notwithstanding, they have been able to relate in a general and appropriate manner what has occurred to them."

Given the record in this case, we conclude that Phillips has failed to demonstrate that his trial counsel was derelict in a constitutional sense by failing to object to the girls' testimony on grounds of competency. On this record, Phillips has *demonstrated* nothing more than a failure to object for the sake of objecting.

The second assignment is overruled.

### III.

### THE TRIAL COURT COMMITTED PLAIN ERROR IN ADMITTING THE COMPLETE TESTIMONIES OF DR. WILLIAM MATRE AND DR. GREGORY RAMEY.

In this assignment of error, Phillips contends that the trial court erred in allowing the jury to hear certain testimony from Dr. William Matre, a physician who examined Tiffannie at Children's Medical Center, and Dr. Ramey, the psychologist who treated both girls after their revelations of abuse by Phillips.

It is contended that both of these witnesses were impermissably allowed to testify that the girls were telling the truth, in violation of *State v. Boston* (1989), 46 Ohio St. 3d 108:

"An expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant."

In that the testimony in question was not objected to, Phillips must satisfy us that the admission of this evidence was plain error.

Dr. Matre testified in pertinent part as follows:

"Q. Doctor, then, do you have an opinion, within a reasonable medical certainty, after conducting your examination of Tiffannie on that particular day as to how that injury was inflicted?"

"A. Yes."

"Q. And what is your opinion?"

"A. I think the physical findings that I have are compatible with her story that there was penetration by the phallus, by the penis."

We do not find this testimony to be Dr. Matre's opinion that Tiffannie was telling the truth when she stated, in effect, to her mother, stepfather, and social worker that Phillips had put his penis in her vagina.

Dr. Matre previously testified that he had examined Tiffannie and found a laceration of the hymenal ring at 4 o'clock, and that lacerations of the lower hymen between 3 and 9 o'clock are "highly associated with penetration of the phallus or the penis."

The questioned testimony, in effect, says no more than that Tiffannie's injury was caused by penile penetration (which happened to be how Tiffannie said she was injured). While Dr. Matre's testimony unquestionably supported Tiffannie's testimony, as well as her pre-trial statements to others such as her mother, stepfather, and social worker, his testimony was not an *opinion* that she was telling the truth.

Dr. Ramey's questioned testimony is as follows:

"(1) Q. Is it your general experience, youngsters such as Tiffannie and Amanda, when they can recall and can verbalize a traumatic experience, in your years of experience, is it usually the children telling, being truthful or is it usually a fantasy of some sort?"

"A. Children rarely, rarely, rarely, if ever, fantasize about the types of sexual behavior that we're talking about this morning. The other category of children who just flat out lie about that, for whatever reason, that does occur, but these children don't fit in any way that pattern."

* * * * *

"(2) Q. Doctor, did you come to any opinion, within a reasonable degree of psychological certainty with regard to both children as to their psychological profile and the circumstances surrounding what they told you about their sexual abuse?"

"A. My conclusion would be within a reasonable degree of psychological certainty, their pattern was remarkably consistent with children who have been sexually abused.

"(3) Q. Does that include the identify of the perpetrator?"

"A. Yes, it does."

"(4) Q. You indicated Tiffannie told you that Uncle Louie put his tongue between her legs and

put his penis in her vagina."

"A. Yes."

"(5) Q. Anything else she told you with regard to what Uncle Louie did?"

"A. I believe that's all."

We have numbered the five questions and answers that Phillips sets out in his appellate brief. Only the first three questions and answers arguably present Dr. Ramey's opinion as to the girls' truthfulness.

We find that the first question and answer presented Dr. Ramey's opinion, albeit obliquely, as to the truthfulness of the girls. By saying that the girls didn't fit in the category of children "who just flat out lie about" sexual abuse, he vouched for the girls' truthfulness.

The same cannot be said for the second question and answer. Dr. Ramey had previously testified that the girls fit the profile of sexually abused children:

"The fifth is, you look at the psychological profile of both and you ask yourself, is it consistent with what we know of kids who have been sexually abused and here, with both, it is remarkably consistent with Tiffy, nightmares and frequent dreams of someone hurting her. With Mandy, there's a great deal of confusion and ambivalence and curiosity about what happened and why it happened. The profile is remarkably consistent."

While his testimony bolstered the girls' testimony and the credibility of the evidence of their pretrial statements, Dr. Ramey was doing no more than opining that the children had been abused, based on his clinical observations. This is specifically authorized by *Boston, supra.* See Guideline A at 126.

We also find that the third question and answer present an opinion by Dr. Ramey that the girls were truthful. Dr. Ramey had previously testified that he utilizes five criteria in evaluating the genuineness of a child's allegation of child abuse: the specificity of the child's accounts as to what happened, the consistency over time of the child's accounts as to what happened, the child's susceptibility to manipulation by the therapist, the child's motivation to lie, and the consistency of the child's profile with the profiles of other known child abuse victims.

In testifying as to how the girls met these criteria, Dr. Ramey testified that they were consistent in their allegation that Phillips was the person who abused them and that he, Dr. Ramey, had no information of any other perpetrator than Phillips. The answer to the third question can be fairly interpreted as a reiteration that the girls' consistency as to the identity of the perpetrator was a factor in Dr. Ramey's concluding that the girls were truly victims of child abuse. Having so concluded, the clear import of Dr. Ramey's answer, although not in opinion form, is that the girls' identification of Phillips as the perpetrator was truthful.

We do not find that the admission of these two answers by Dr. Ramey amounts to plain error. Unlike the situation in *Boston,* the two girls in this case testified and were subject to cross-examination before the jury. Phillips presented a defense which included his own denial and testimony from Phillips and others which insinuated that the instigator of the accusations against Phillips was the girls' mother and the actual perpetrator was the girls' stepfather.

The considerations which call into play the "plain error" doctrine, *Id.,* are absent from this case.

The third assignment is overruled.

*Judgment affirmed.*

BROGAN, J. and FAIN, J., Concur