KLEES, Judge.
On June 6,1985, the appellant was indicted for one count of aggravated rape and three counts of armed robbery. He moved for the appointment of a sanity commission and on July 11th he was found competent to stand trial. On October 10th, a twelve-member jury found him guilty as charged on all four counts. He was sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence for the rape conviction and ninety-nine years at hard labor without benefit of parole, proba *123 tion, or suspension of sentence for each armed robbery conviction. These four sentences were ordered to be served consecutively.
PACTS:
At approximately 8:00 p.m. on June 29, 1984, the three victims a male and two females who worked together left a restaurant with the intention of visiting the World’s Fair. The trio walked down Pryta-nia Street to Toledano Street where one of the victim’s car was parked. As they were standing at the car waiting to enter it, they were approached by two men bearing guns, one of which was identified as the defendant Virgil Ellis. The men directed the trio to enter the car and the two gunmen joined them. The men ordered the victims to surrender their jewelry and money, threatening to kill them if they failed to do so, noting that they had killed in the past. Upon learning that one of the victims had an automatic withdrawal card from a nearby bank, the gunman ordered him to drive to the bank. The other gunman stayed with the women while Ellis accompanied the male victim to the automatic teller machine. After withdrawing $250.00 and satisfying Ellis that this amount was the limit that could be withdrawn from the machine, Ellis and the male victim returned to the car.
The gunman then directed the driver of the vehicle to proceed downtown. On the way, Ellis began rubbing one of the female’s leg and told her that there was something else he had to do with her. The other gunman argued that they should leave, noting that they had the money and jewelry. Ellis refused, and he eventually directed the driver to park the car under a bridge approach overpass. Ellis forced one of the females from the car and the other gunman remained inside and ordered the remaining persons to duck down in the front seat. Ellis dragged the victim to a nearby vacant lot where he raped her. The victims then drove to Touro Infirmary where the female was examined and the police were contacted.
Pursuant to a Crimestopper announcement, Ellis’ name was obtained as a possible suspect. Although Ellis picture was not chosen in a photographic lineup, all three victims identified Ellis at physical lineups.
Vaginal smears and swabs taken from the rape victim indicated that her attacker was a “secretor” with type B or AB blood. Ellis was found to be a “secretor” with type B blood. A fingerprint lifted from the car door next to which the rapist was seated was found to match those of Ellis.
Patricia and Wellington Ratcliff both testified that Ellis was. with them at a break dancing competition at the time of the robberies and rape. However, they also testified that Ellis was with them at another break dancing competition on July 6, 1984, despite the fact that the prosecution showed Ellis was in jail at that time. Ms. Ratcliff also admitted that she had prior convictions for the attempted use of a stolen credit card and for possession/possession with the intent to distribute marijuana, cocaine, PCP, preludin, valium, and talwin.
ERRORS PATENT
A review of the record for errors patent reveals there are none.
ASSIGNMENT OP ERROR
By his sole assignment of error, the appellant contends that the trial court erred by allowing the defense counsel to waive his presence at his mental competency hearing. The appellant argues that his right to be present at the hearing was a personal right, and as such it could not be waived by his counsel without his express permission. At the competency hearing, the trial court began the hearing by noting:
After discussion at the bench, for the record, for purposes of taking the testimony of the doctors the defense counsel is going to waive the presence of the defendant, Virgil Ellis, with the understanding that if any new information comes to light after his discussion with Mr. Ellis that the Court will allow the defense to open this lunacy commission findings. (Lunacy Hearing tr. 1)
C.Cr.P. art. 831, which lists the proceedings at which a defendant must be *124 present,[1] does not include competency hearings. Art. 834 provides in part that a “defendant has a right to be present, but his presence is not essential to the validity of any of the following proceedings in a criminal prosecution: (1) The making, hearing of, or ruling on a preliminary motion or application addressed to the court”. The appellant concedes that there is no State statutory provision which gives him a right to be present at a sanity hearing. However, he argues that this is a due process constitutional right which may be waived only by him personally.
In State v. Narcisse, 426 So.2d 118 (La.1983), cert. den.; Narcisse v. Louisiana, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983); the defendant requested the appointment of a sanity commission to determine whether he was competent to stand trial. The defendant was examined, but the case proceeded to trial without a contradictory hearing on the issue of his competency to stand trial. The Louisiana Supreme Court upheld the defendant’s eventual conviction, noting that the trial court had read the findings of the sanity commission, had listened to testimony as to the defendant’s sanity presented at trial, and had observed the defendant in court. In addition, there was some indication that the defense counsel (not the defendant himself) conceded prior to the start of trial that the defendant was competent to proceed to trial. The Court held that the trial court did not err by finding the defendant competent to stand trial in the absence of a contradictory hearing.
In the matter before us the defendant’s attorney waived defendant’s presence at the sanity hearing. All the questions asked at the hearing related to the competency of defendant to proceed to trial and his sanity at the time of the alleged crime. Counsel for defendant then had the opportunity to cross examine Dr. Cox, an expert in forensic psychiatry. A stipulation was then agreed to between the state and defense counsel that if Dr. Henry Braden were called, his testimony would be of a similar nature as Dr. Cox. At the conclusion of the hearing the trial judge announced that he would not rule until the next day, at which time, the defendant was to be in court and after counsel had a chance to talk to the defendant and had nothing further to present. On the next day with defendant present, the Court ruled that the defendant was competent to stand trial. There were no objections from defendant or counsel.
As to the accused’s due process right to be present when a criminal prosecution is taking place, in Snyder v. Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934), the United States Supreme Court held that such a right existed
whenever his [the defendant's] presence has a relation, reasonably substantial, to the fulness of his opportunity to defendant against the charge_ [T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.
The limited scope of the right enunciated in Snyder was reaffirmed in United States v. Gagnon, 470 U.S. 522, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985). In Gagnon the trial judge received a message from a bailiff that one of the jurors was worried because Gagnon was sketching the members of the jury as he sat at the defense table. The *125 judge announced to all concerned that he would examine the juror in chambers to see if the juror was so prejudiced by this behavior that he could not be fair and impartial even if the behavior were to cease. No objection was voiced as the judge met in chambers with the juror and defense counsel, but out of the presence of the jury. Assuring himself by his own questioning and that of the defense counsel that the juror could continue impartially, the judge allowed the juror to remain. Following the conviction, however, the defendants all argued that their due process rights had been violated by their exclusion from chambers during the examination of the juror. The Ninth Circuit Court of Appeals held that the defendants had both constitutional and statutory rights to be present, and that any waiver of the rights had to be a personal waiver, and not one implicit in the action or inaction of counsel. The United States Supreme Court granted certiorari, and reversed, thus maintaining the convictions. The Court was of the opinion that the presence of the respondent was not necessary to ensure fundamental fairness, that the respondent could have done nothing at the conference, nor would they have gained anything by attending. 470 U.S. at 527, 105 S.Ct. at 1484-85. Thus the constitutional right had not been infringed upon; as to any statutory right, the Court held that the defendant must assert this right, and that the failure to object to a meeting outside his presence waived that right under F.R.Cr.P. 43.
In Louisiana there is no such statutory right. In this case, with defense counsel’s waiver of presence at the sanity hearing, and defendant’s opportunity to object prior to trial we fail to see how defendant’s presence at the sanity hearing could have assisted either his counsel or the judge.
We also note that no substantive testimony was brought out at the hearing which would enable defendant to better defend himself at trial. See Kentucky v. Stincer, — U.S. -, 107 S.Ct. 2658, 96 L.Ed.2d 631; and United States v. Gagnon, supra.
Accordingly for the reasons expressed above, defendant’s conviction and sentence are hereby affirmed.
AFFIRMED.

. Art. 831 provides:
A defendant charged with a felony shall be present:
(1) At arraignment;
(2) When a plea of guilty, not guilty, or not guilty and not guilty by reason of insanity is made;
(3) At the calling, examination, challenging, impanelling, and swearing of the jury, and at any subsequent proceedings for the discharge of the jury or of a juror;
(4) At all times during the trial when the court is determining and ruling on the admissibility of evidence;
(5) In trials by jury, at all proceedings when the jury is present, and in trial without a jury, at all times when evidence is being adduced; and
(6) At the rendition of the verdict or judgment, unless he voluntarly absents himself.