**F I L E D**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

KEITH DEAN MATHIS,

      Petitioner-Appellant,

v.

L.E. BRUCE, Warden, Hutchison
Correctional Facility, and PHILL
KLINE, Attorney General of the State
of Kansas,

      Respondents-Appellees.

No. 04-3099
(D.C. No. 01-3048-KHV)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, **HOLLOWAY** and **LUCERO**, Circuit Judges.[**]

Petitioner-appellant Keith Dean Mathis brought an application under 28 U.S.C.

§ 2254 for habeas corpus relief in the district court, challenging his conviction by a

state court in 1996 for the crime of rape. The district judge denied the petition by

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.

an unpublished Memorandum and Order entered February 10, 2004. She did not act on the request for a certificate of appealability. We previously granted a certificate of appealability, and we now affirm the district court.

**I**

We will briefly summarize the facts underlying Mathis' conviction. This summary of the trial evidence is based primarily on testimony of the victim, except where otherwise indicated.

Mathis and the then seventeen year old victim, J.R., were co-workers at a restaurant. They were on friendly terms. On the afternoon of February 11, 1996, J.R. met Mathis and her cousin at a bar after work. After they had a few drinks, J.R.'s cousin left. Later, J.R. decided to go to a convenience store to call her mother, and Mathis went with her in her car. When they returned to the bar parking lot, he kissed her. They then decided to drive around awhile before J.R. was to go meet her boyfriend. Before they left the bar parking lot, Mathis got something out of his car and put it in the backseat of J.R.'s car; she thought at the time it was a coat but it turned out to be a blanket.

After the two had driven into the country, J.R. pulled onto a dirt road, intending to turn around and go back to town. She testified that Mathis then threw the car out of gear and grabbed her around the neck, forcefully kissing her and groping her breasts. J.R. protested that he was hurting her, but he pulled her over

the center console almost on top of him. She was having trouble breathing because of how tightly he was holding her neck. Then he pulled her out of the car, grabbed the blanket, and led her away from the car. He pulled her to the ground and removed her clothes. J.R. testified that she resisted being pulled from the car, but then did not resist being led away from the car and disrobed because she was scared and shocked. When Mathis attempted intercourse, however, she tried to avoid it by moving as best she could. He was able to restrain her in spite of her efforts and raped her. They then gathered up her clothes and drove back to town.

J.R. went to her boyfriend's house, and he noticed that her neck was red. When asked about that, and the fact that she was late, J.R. said only "let's just say Keith kissed me forcefully." The next day at school she told two girlfriends about the assault. At their suggestion she spoke to two counselors, who persuaded her to call the police. She reported the rape and had a physical examination. The nurse who examined her testified that she had bruising on her neck, breasts, upper thigh, and elsewhere on her legs, and that further examination revealed vaginal tearing and abrasions consistent with forced penetration. The nurse testified that J.R.'s were the most significant vaginal injuries that she had seen in five years.

Others who had worked at the same restaurant with J.R. and Mathis testified at trial, corroborating the victim's testimony that she and Mathis had only been friends. There was also testimony that Mathis had told at least two co-workers that

he wanted to have sex with J.R., and he told one of these witnesses after the attack that J.R. had resisted but he "got what he wanted."

Mathis testified at trial. He denied raping J.R. He testified that they had kissed twice in the parking lot, and the second time J.R. had put his hand on her breast. He testified that they continued petting a little while, and then he became concerned that they were in a public place. He testified that they drove into the country, spread the blanket on the ground and removed her clothes. He testified that he was unable to get an erection because he was too intoxicated, so after awhile they returned to town. In sum, he said that everything that happened was consensual, but there was no intercourse.

## II

On May 16, 1996, Mathis was convicted on the rape charge after a jury trial. Three months later he was sentenced to 260 months in prison. In the interim, the state trial court had denied Mathis' motion for a new trial. Mathis appealed his conviction to the Kansas Court of Appeals, which affirmed the conviction on July 31, 1998. Under Kansas law, Mathis had 30 days to file a petition for review in the Supreme Court of Kansas. He failed to do so, filing one day late. On September 1, 1998, he sought leave to file a petition out of time. The Kansas Supreme Court denied the motion.

Mathis then sought post-conviction relief in state court. The state district

court noted that the petition raised the same issues that had been raised in the direct appeal and denied relief, citing Kansas Supreme Court Rule 183(c)(3), which generally prohibits using a post-conviction proceeding "as a substitute for direct appeal involving mere trial errors or as a substitute for a second appeal." The Kansas Court of Appeals affirmed the denial of relief, and the Kansas Supreme Court denied review.

## III

### A

Mathis filed his petition for writ of habeas corpus in the federal district court on February 12, 2001. Mathis raised three issues in his petition: that trial counsel was ineffective in failing to thoroughly investigate witnesses and to exploit inconsistencies between witnesses' statements as reflected in police reports and those witnesses' trial testimony; that the trial court violated his right to counsel by refusing to appoint new counsel to argue, at the post-trial motion stage, that his trial counsel had been ineffective; and that the trial court had violated his due process rights in two ways – by preventing him from presenting his theory of defense to the jury by refusing a particular instruction his trial lawyer had requested, and by responding to a question from the jurors in his absence. We note that these are the same issues that were decided on the merits by the Kansas Court of Appeals in Mathis' direct appeal.

The federal district judge noted that Mathis had procedurally defaulted his

claims by not filing a timely petition for review with the Kansas Supreme Court. In spite of her stated concern that the procedural default rule might bar all relief in federal court, the judge ultimately addressed the issues on the merits rather than trying to completely untangle the "procedural morass" created by Mathis' attempt to avoid procedural bar with an argument of ineffective assistance of appellate counsel.

The decision to reach the merits under these circumstances is specifically authorized by 28 U.S.C. § 2254(b)(2). We likewise go to the merits of the habeas claim. Primarily for the same reasons as were given by the district judge, we conclude that habeas relief should be denied.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) applies in this case because Mathis' petition was filed after its effective date. *See Paxton v. Ward*, 199 F.3d 1197, 1204 (10th Cir. 1999). Because the issues raised here were addressed by the state court, this court may not grant relief unless the determination of the state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented," *id*. § 2254(d)(2).

B

The district judge first considered Mathis' claim that his trial counsel had been ineffective because counsel had allegedly failed to investigate the case thoroughly

and as a consequence had failed to call one or more potential witnesses and failed to effectively cross-examine others. In essence, this claim was based on contentions that the victim had made inconsistent statements and that other prosecution witnesses had made statements during the investigation which tended to exculpate Mathis. The district judge observed, however, that the alleged inconsistencies were minor and that, although pursuit of the questioning suggested might have led to "minimally relevant evidence," Mathis had not explained specifically what that evidence would have been, nor had he suggested why he had not done so. The judge concluded that Mathis had failed to show that trial counsel had been ineffective in this respect. Then in a footnote, she added that Mathis could not show that the alleged ineffectiveness had been prejudicial to his defense under the second prong of the standard established by *Strickland v. Washington*, 466 U.S. 668 (1984).

We agree with the district judge that Mathis has shown neither that his counsel's performance fell below an objective standard of reasonableness, *Strickland*, 466 U.S. at 688, nor a reasonable probability that but for errors by counsel the result of the proceeding would have been different, *id.* at 694.

C

Mathis's second claim arose from unusual and quite unfortunate circumstances. After his conviction, Mathis' trial attorney filed a motion for new trial within the ten days permitted by state law. Some time later, Mathis filed a pro

se motion or supplement in which he first raised his claim of ineffective assistance of trial counsel. Apparently Mathis was then able to retain new counsel, who was to represent him in arguing the motion for new trial and particularly in arguing the ineffective assistance point. However, the night before the motion for a new trial was to be heard, the new attorney had died. The hearing was continued.

Petitioner filed a pro se motion for appointment of new counsel. The trial court re-appointed Petitioner's original trial counsel. The court told Mathis he could proceed entirely pro se or with that trial counsel. In the end, trial counsel argued all of the issues raised in the motion for new trial except the ineffective assistance issue, which Mathis argued pro se. The trial court denied the motion, finding inter alia that trial counsel had not been ineffective.

On direct appeal, the intermediate state court relied on the state law principle that a trial court has discretion in deciding whether to appoint counsel to represent a criminal defendant in pursuing an untimely motion for new trial. The appellate court went on to examine the merits of the ineffective assistance of trial counsel claim, as the trial judge had done, and concluded that Mathis had failed to show that counsel had been ineffective. The federal district judge, having already concluded that the ineffective assistance of trial counsel claim had no merit, concluded that the state appellate court had not unreasonably applied the law to the facts of the case and that federal habeas relief was therefore not to be granted.

In this appeal, Mathis does not dispute the holdings of the state and federal courts that he was not prejudiced by having to argue pro se his claim of ineffective assistance of trial counsel at the hearing on his motion for new trial. Mathis argues instead that this case is one of the complete denial of counsel, which the Court has referred to as so likely to prejudice the accused that prejudice should be presumed. This applies, Mathis argues, whenever an accused is denied the presence of counsel at "a critical stage," citing *Bell v. Cone*, 535 U.S. 685, 695-96 (2002) (discussing *United States v. Cronic*, 466 U.S. 648 (1984)). Mathis offers no support, however, for his implicit assumption that this was a "critical stage" at which the assistance of counsel was required by the Constitution.

The state, on the other hand, contends that this court must give AEDPA deference to the holding of the Kansas Court of Appeals that consideration of the untimely post-conviction motion was not a critical stage of the proceedings requiring appointment of counsel. The United States Supreme Court has never spoken directly to the question, the state observes. The Kansas courts have decided, based on both state law and the federal Constitution, that there is a right to counsel for *timely* post-trial motions. Where the motion for new trial is not timely, however, a Kansas district court is given discretion whether to appoint counsel, based on whether the motion suggests a "realistic basis" for a new trial. *State v. Kingsley*, 851 P.2d 370, 374-75 (Kan. 1992).

In this case, the ineffective assistance contention was made in an untimely pro se motion. The Kansas Court of Appeals determined that the motion contained no realistic basis for obtaining a new trial, and so held that the trial court had not abused its discretion in declining to appoint counsel for the issue. This holding must be sustained under the standards of the AEDPA, which we must apply. The state court's holding was neither contrary to, nor an unreasonable application of, firmly established United States Supreme Court precedent, *see* 28 U.S.C. § 2254(d)(1), nor an unreasonable determination of the facts in light of the evidence presented, *see id.* § 2254(d)(2). Our analysis under AEDPA need go no further. We believe, however, that some further comment may be proper.

To accept the argument made by Mathis would be to impose on the trial courts, both state and federal, an enormous new burden. For it would seem that trial judges would be required to appoint new counsel for the post-trial motions whenever the convicted defendant raised an ineffective assistance claim. We certainly cannot make such a rule in this case because, as we have shown, we are instead compelled by the deference mandated under AEDPA to defer to the state appellate court's disposition. On the other hand, the Supreme Court has not held that due process never requires the appointment of new counsel to argue ineffective assistance of trial counsel in conjunction with a motion for a new trial.

We will only say that, even if we were not compelled to reject this argument

under AEDPA, we would still likely be unpersuaded in this case that petitioner's due process rights had been denied. This court has held that counsel is required in the interim between conviction and the beginning of the appeal "in order that a defendant knows that he has the right to appeal, how to initiate an appeal and whether, in the opinion of counsel, an appeal is indicated." *Baker v. Kaiser*, 929 F.2d 1495 (10th Cir. 1991). Kansas does not require a motion for a new trial to be filed as a predicate for an appeal; thus Mathis' right to appeal was not impacted by the denial of counsel for the motion. Mathis was able to and did present his ineffective assistance argument on direct appeal to the Kansas Court of Appeals, as we have discussed *supra*, so it is clear that there was no prejudice to Mathis in this case.

We need not belabor the point further, but we do note the incisive analysis in *Johnston v. Mizell*, 912 F.2d 172 (7th Cir. 1990), explaining why a presumption of prejudice is not necessary when the defendant's ability to raise the issue of ineffective assistance of trial counsel on direct appeal is not impaired. We have no occasion to, and do not, consider whether due process might require a different result under different circumstances.

D

Mathis also claimed that the trial judge's decision to reject a requested instruction had deprived him of his due process right to present his theory of defense

to the jury. The requested instruction would have told the jurors that defendant could be acquitted if they found that he had mistakenly believed that the victim had consented to the sexual activity. The trial judge had refused to give this instruction, reasoning that the instruction on the elements of the crime adequately addressed the subject. The federal judge noted that the state appellate court had found no prejudice from this decision because Mathis' theory at trial was that no intercourse had occurred, and she concluded that the argument on this point "borders on the frivolous." We agree and hold there was no prejudicial error in the instructions.

E

Finally, Mathis asserted that a due process violation occurred when the trial court responded to a question from the jury during its deliberations without the defendant being present. The jury had sent a note asking whether, under the instruction on intent, Mathis had to be aware that the victim was not consenting. The judge consulted with the attorneys and, with mutual assent, replied in writing to the jurors that they should refer to the instructions previously given, specifically the instruction on the elements of the crime. The state court of appeals found that this was not prejudicial error, although it was in violation of a state statute, at least in part because that court concluded that Mathis' presence was not essential to a fair resolution of how to respond to the jury's question.

The federal district judge here noted the Supreme Court's teaching that "the

right [of the accused] to personal presence at all critical stages of the trial and the right to counsel are fundamental rights of each criminal defendant." *Rushen v. Spain*, 464 U.S. 114, 117 (1983). Further she noted that the Supreme Court has held that "a jury question is tantamount to a request for further instructions." *Rogers v. United States,* 422 U.S. 35, 39 (1975). See Memorandum and Order of the District Court at 16-17. The federal district judge here said that such further jury instructions were a critical stage at which the defendant had the right to be present, citing *Rogers*, 422 U.S. at 39. Memorandum and Order at 16-17. Nevertheless, again the federal district judge noted in her Memorandum and Order at 17, that a defendant's presence is required by due process "to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *United States v. Gagnon,* 470 U.S. 522, 526 (1985). Further the Memorandum and Order below noted the recognition by the Supreme Court that "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987).

The state appellate court had determined that the formulation of the response to the jury question had been a "critical stage" but had then gone on to hold that the constitutional violation had been harmless. The federal district judge then framed the issue before her as whether the state appellate court's determination was an

unreasonable application of federal constitutional law. She held that it was not: "Mathis' input on this legal issue would not have changed the outcome."

We are persuaded that the district court's reasoning was sound and the conclusion is correct.

Accordingly, the judgment of the district court is **AFFIRMED.**

Entered for the Court

William J. Holloway, Jr.
Circuit Judge