WILSON, Circuit Judge, concurring:
This troubling case presents a familiar factual scenario-a district court judge permitted a criminal trial to resume, and inculpatory evidence to be taken, without defense counsel present. We recently confronted a nearly identical appeal from the same district judge as an en banc court in United States v. Roy, 855 F.3d 1133 (11th Cir. 2017) (en banc). In Roy , we determined that such constitutional violations can-and usually will-be harmless. The facts of this case, however, are even more egregious than those in Roy because here, the defendant was also absent. Despite the deserted defense table, the district court judge prompted the government to continue its direct examination of an important witness.
*1282 I maintain that the deprivation of counsel in Roy -like the constitutional violation in the instant case-constituted a structural error, and "[t]he Supreme Court has given explicit instructions for remedying structural error: remand for new, constitutionally-compliant proceedings." Id. at 1246 (Wilson, J. dissenting) (citing United States v. Cronic , 466 U.S. 648, 659 & n.25, 104 S.Ct. 2039, 2047 & n.25, 80 L.Ed.2d 657 (1984) ). The Roy majority, however, decided to review the constitutional violations for harmless error beyond a reasonable doubt.
Recognizing a structural error and remanding Roy for constitutionally-compliant proceedings would have prevented this district court judge from continuing his indisputably unconstitutional practice of conducting criminal trials in the absence of defendants or their counsel. Such a decision would have incentivized the judge to forego his unconstitutional courtroom policies; conversely, however, our decision to employ the harmless error analysis effectively sanctioned these policies, as that analysis provides no mechanism for future defendants unlucky enough to sit in this particular judge's courtroom to challenge the constitutional violations that will inevitably continue to occur. Ultimately, our decision in Roy confirms what the Supreme Court has consistently held: structural errors "defy analysis by harmless-error standards" because they "affect[ ] the framework within which the trial proceeds." Arizona v. Fulminante , 499 U.S. 279, 280, 309-10, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991).
Nonetheless, we are bound to apply the framework established in Roy -harmless error beyond a reasonable doubt. Roy , 855 F.3d 1133, 1141 (majority opinion). Despite Roy 's mandate, however, the majority chose to review the constitutional violations at issue in this case for plain error. Because both analyses result in an affirmance, I concur.
I.
A grand jury charged Lourdes Margarita Garcia with (1) conspiring with her husband, Angel, and others (a) to defraud the United States by impeding the IRS and (b) to commit an offense against the United States by making false statements on her tax returns, in violation of 18 U.S.C. § 371 (Count 1); and (2) making false statements on her 1997, 2006, and 2007 tax returns, in violation of 26 U.S.C. § 7206(1) (Counts 2-4). Garcia and her husband operated a medical clinic, Global Medical Group (Global), in Miami, Florida. The Garcias set up Global as a pass-through corporation, taking their income directly from Global's corporate bank accounts. The indictment alleged that the income Garcia received from Global was significantly greater than the amount she and her husband represented to their accountant and the IRS.
Garcia stood trial in the Southern District of Florida. The trial lasted ten days and involved dozens of witnesses. The government called IRS Agent Angela Arevalo as its twenty-third and final witness and, in the presence of the defendant and her attorneys, Arevalo testified at length about Garcia's tax returns for 1997, 2006, and 2007; Global's and the Garcias' income during those years; and how she reviewed the Garcias' accounts to determine what transactions were attributed to personal use. During this portion of Arevalo's testimony, the government introduced a schedule prepared by Arevalo summarizing the "disposition of proceeds for tax years 2006 and 2007" in order to "demonstrate how the income, coming from Global Medical center[,] was disposed by the defendant" in taxable years 2006 and 2007. Doc. 77 at 75-76. Garcia's counsel did not object to the admission of this evidence.
*1283 As the government prepared to review a few of the transactions, the court ordered a lunch recess. At the end of this break, courthouse personnel delayed Garcia and both of her attorneys at the security checkpoint, apparently due to a false alarm indicating that Garcia had a cell phone in her possession. One of Garcia's attorneys, Sabrina Puglisi, proceeded to the courtroom; the other, Ashley Litwin, remained behind with Garcia. By the time Puglisi reached the courtroom, however, the government had already resumed its direct examination of Agent Arevalo. Garcia and Litwin arrived approximately two to seven minutes later. The parties agree that examination occurred without counsel for approximately three minutes and without the defendant for approximately five to ten minutes.[1]
While counsel was absent, three checks from 2006 and three checks and four debit charges from 2007-all of which were contained in the previously-admitted schedule-were published and shown to the jury. A cross, redirect, and re-cross followed, during which Garcia's counsel questioned Arevalo for about fifty pages of the trial transcript before the government rested its case.
The transcript does not reveal why the district court judge chose to resume the examination of Arevalo in the absence of both the defendant and her counsel. The judge did not directly comment on the defense's absence; however, when the prosecutor-likely realizing the inappropriateness of the situation-gestured to the empty defense table, the judge simply said "please continue."
Curiously, Garcia never objected to the taking of inculpatory evidence in her absence, despite the government's prompting. During the next trial day, the prosecutor requested a sidebar where he acknowledged that he conducted a portion of Agent Arevalo's direct examination without the defendant or her counsel present, and asked if the court would be willing to read back the missed testimony. The judge responded:
[Garcia] didn't have to be here if she didn't want to be here. I mean, everybody else seemed to be able to make it on time.... If she wants to read it, she can order the transcript and read it. There wasn't anything in there that I can recall, any particular issue. I mean, if you want to order the transcript, you're welcome to.
Doc. 78 at 3-4. The prosecutor pressed on, noting that he wished to ensure that Garcia had a chance to consider any incriminating evidence presented during her absence before the government rested its case. The district court judge continued:
I mean, I took it as she voluntarily absented herself from the proceedings. One way to look at it. Just out of an abundance of caution, if she thinks there is any kind of prejudice, she can order the transcript and review it.... I mean, it's self-inflicted. She manufactured the problem herself; I don't know how she can fault anybody else for it.
Id. at 4-5. In a final attempt, the prosecutor asked defense counsel if she was "going to state an objection at this point," to which she responded: "Not at this time, *1284 no." Id. at 5. The sidebar concluded, and the trial continued.[2]
After the jury convicted her of all counts, Garcia filed a Motion for New Trial, raising Fifth Amendment, Sixth Amendment, and Federal Rule of Criminal Procedure 43 claims. The district court denied her motion, and Garcia appealed, arguing that she is entitled to a new trial because (1) her constitutional rights were violated by the district court judge's decision to allow the government to introduce inculpatory evidence while she and her counsel were absent, and (2) the indictment was insufficient and the jury instructions were improper.
The majority affirmed the district court's decision on all counts, reviewing the constitutional violations for plain error. I agree that we must affirm. I maintain, however, that our Roy decision mandates that we review this constitutional violation for harmless error beyond a reasonable doubt, and that is why I write separately. Because I agree with the majority's reasoning regarding Garcia's indictment and jury instruction claims, I do not address them.
II.
Garcia alleges that several constitutional violations occurred when the district court started trial without her or her counsel, and that each warrants reversal of her conviction. First, she argues that the absence of her counsel violated the Sixth Amendment. Second, she contends that her absence violated the Fifth and Sixth Amendments. Finally, she argues that her absence combined with her counsel's absence amplifies the severity of these violations. Although I agree with Garcia that serious constitutional violations occurred, her arguments for a new trial are ultimately unavailing under the harmless error analysis required by Roy .
A. Absence of Garcia's Counsel
Garcia argues that the absence of her counsel during the introduction of inculpatory evidence by a key prosecution witness violated her Sixth Amendment right to counsel and, accordingly, requires reversal of her convictions. First, she claims that the violation constituted structural error, necessitating automatic reversal. Second, she argues that it amounted to hybrid error under Brecht v. Abrahamson, 507 U.S. 619, 638 n.9, 113 S.Ct. 1710, 1722 n.9, 123 L.Ed.2d 353 (1993). Finally, she asserts that, in any event, the error was harmful. The majority dismisses each of these arguments, instead reviewing the constitutional violations for plain error. I address each theory-structural error, hybrid error, plain error, and harmless error-respectively.
i. There Was No Structural Error
There is no doubt that a startling, intentional depravation of Garcia's Sixth Amendment right to counsel occurred here. Although it is well-established that "a trial is unfair," and prejudice is presumed, "if the accused is denied counsel at a critical stage of his trial," United States v. Cronic , 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984), there is no getting around Roy . In that case, the same district judge permitted the government to go forward with direct examination in the absence of the defendant's counsel. The prosecution elicited inculpatory testimony for seven minutes before Roy's counsel arrived. Roy , 855 F.3d at 1135. After considerable arithmetic and an exhaustive analysis of the meaning of "stage," the en banc court determined that *1285 the prosecution's 18 questions on direct examination did not amount to a "critical stage" of Roy's trial under Cronic . Id. at 1148. The majority specifically found that 18 questions (out of more than 2,500) and 7 minutes (out of 1,884) did not "constitute a separate step in the process of the trial, or a discrete phase of it," such that it could be considered a "stage" of a trial at all. Id. at 1140, 1147-48.
If we are faithful to the majority opinion in Roy , then it is clear that the absence of Garcia's counsel here did not amount to a structural error under Cronic . Garcia's counsel was absent for a shorter amount of time (3 minutes) in a longer overall trial (2,987 minutes) than Roy's. While "[l]ength alone does not always define a stage of a trial" for Cronic purposes, id. at 1146, it is clear that this portion of Garcia's trial falls outside of the especially demanding definition of "critical stage" put forth in Roy , which would require counsel's absence "throughout an entire discrete, critical stage of a criminal proceeding."[3] ibr.US_Case_Law.Schema.Case_Body:v1">See id. at 1164.
Garcia does not fare any better under Roy 's "substantial portion determination." Id. at 1165. Under this case-by-case analysis, a presumption of prejudice may attach depending upon "the length of time counsel was out, the proportion of the trial missed, [ ] the significance of what [counsel] missed," and "whether the reviewing court can determine when counsel was out and what he missed." Id . As noted above, the length of time that Garcia's attorneys were absent (3 minutes) and the proportion of the trial that they missed (.1%) are even less significant than in Roy . Furthermore, we know almost precisely which portion of the trial Garcia's counsel missed; her counsel cross-examined the government's witness extensively; and Garcia's counsel were encouraged to order the transcript and determine whether anything else was objection-worthy, although they declined to do so. Under Roy 's province, there was no structural error, be it Cronic or otherwise.
ii. Brecht Hybrid Error Does Not Apply
Next, Garcia asks us to apply the "hybrid error" exception contemplated in footnote nine of Brecht v. Abrahamson , which would require reversal without a showing of actual prejudice. 507 U.S. 619, 638 n.9, 113 S.Ct. 1710, 1722 n.9, 123 L.Ed.2d 353 (1993). In Brecht , which established the standard for habeas petitioners challenging constitutional trial errors, the Supreme Court noted that an exception may be warranted "in an unusual case" where "a deliberate and especially egregious error of the trial type, or one that is combined with a pattern of prosecutorial misconduct, might so infect the integrity of the proceeding as to warrant the grant of habeas relief, even if it did not substantially influence the jury's verdict." Id .
*1286 The Supreme Court has not applied-or even remarked upon-this exception since, and neither has this Court. Of the circuits that have discussed the Brecht footnote nine exception, all have recognized that it is reserved for especially shocking trial misconduct, those "unclassifiable and pervasive errors" the harmful effects of which cannot be evaluated from the record. United States v. Bowen , 799 F.3d 336, 353 (5th Cir. 2015) ; see also Hassine v. Zimmerman , 160 F.3d 941, 959-61 (3d Cir. 1998). Instructively, in Brecht itself, the Supreme Court found that it was, "of course, [ ] not presented with such a situation" where the government committed numerous Doyle[4] violations during cross-examination and closing arguments while prosecuting a defendant for first-degree murder. Brecht , 507 U.S. at 638 n.9, 113 S.Ct. at 1722 n.9. Ultimately, no authority exists justifying the extension of the Brecht exception to the constitutional violation at issue in this appeal.
iii. Plain Error Analysis is Improper
The majority reviews the constitutional violation here for plain error, rather than for harmless error beyond a reasonable doubt. While I maintain that neither analysis should be necessary, as a structural error occurred and "[t]he Supreme Court has given explicit instructions for remedying structural error: remand for new, constitutionally-compliant proceedings," Roy , 855 F.3d at 1246 (Wilson, J., dissenting) (citing Cronic , 466 U.S. at 659 & n.25, 104 S.Ct. at 2047 & n.25 ), I recognize that we are bound by the majority's decision in Roy . Accordingly, the proper standard of review is harmless error beyond a reasonable doubt.
In deciding to apply the plain error analysis, the majority focuses on the following language in Roy :
Absent any knowledge of why defense counsel was absent, whether the AUSA or judge realized he was not present, about what counsel realized or didn't when he walked in late, and about whether he took some ameliorative action not reflected in the transcript, we will not apply the plain error rule or remand for any findings necessary to decide if it is applicable. Instead, in order to simplify our analysis, we will indulge the assumption that the plain error rule does not apply even though there was no contemporaneous objection.
Roy , 855 F.3d at 1141 (majority opinion). The majority interprets this passage to mean that, because "[w]e did not know whether defense counsel had preserved the error, [ ] we gave him the benefit of the doubt on appeal," Maj. Op. at 1268, and thus "indulge[d] the assumption that the plain error rule d[id] not apply," Roy , 855 F.3d at 1141. In this case, the majority reasons, it is apparent that counsel failed to object, and therefore it is unnecessary to "indulge th[is] assumption"; accordingly, plain error review applies. This is a misinterpretation of Roy , as it considers only whether defense counsel took "ameliorative action," and ignores several other factors relied upon by the Roy court.
Although the majority is correct in stating that counsel in this case did not object to the constitutional violations, we are still bound to review for harmless error beyond a reasonable doubt because we do have knowledge of (1) why defense counsel was late (she was held up in security), (2) whether the AUSA realized she was not *1287 present (he gestured to the defense table, acknowledging that it was empty), and (3) whether the judge realized counsel was not present (he responded to the AUSA's gesture with "please continue"). In Roy , we emphasized the importance of the third factor-whether the judge noticed defense counsel was absent. In dismissing the appellant's contention that the district court "allowed" the introduction of inculpatory evidence in the absence of defense counsel, the Roy court stated, "[t]here is nothing in the record to indicate ... that the court did not notice counsel was absent." Roy , 855 F.3d at 1141 n.6. In the instant case, it is clear the judge noticed that the defendant and her counsel were absent based on his instruction to the AUSA to "please continue" after the AUSA gestured to the unoccupied defense table. Even without that indication, however, it is illogical to suggest that a judge would not notice a vacant defense table. Regardless of these facts, under Roy , "[w]e can indulge the assumption" that the harmless error analysis, as opposed to the plain error analysis, applies "because even with it the result is the same." Id .
Moreover, I fear that the majority's decision to review such blatant constitutional violations for plain error sets a dangerous precedent. The harmless error analysis dictated by Roy effectively sanctions this district court judge's unconstitutional practice of overseeing criminal trials while defendants and their counsel are absent, as the standard is too burdensome to overcome. Reviewing the constitutional errors that will inevitably continue to occur in this judge's courtroom for plain error gives future defendants even less opportunity to remedy these constitutional violations.
iv. There Was No Harmful Error
Having concluded that structural error, hybrid error, and plain error review do not apply, we are left with Chapman harmless error review. See Roy , 855 F.3d at 1178. Under this standard, we must determine whether the government has "prove[n] beyond a reasonable doubt that the error complained of"-the absence of counsel during three minutes of testimony-"did not contribute to the verdict obtained," but was instead "harmless beyond a reasonable doubt." Chapman v. California , 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). I address the relevant counts in turn and explain why the government has met its burden with respect to each.[5]
1. The 1997 Substantive Count
Count 2 charged Garcia with making a false statement in her year 1997 tax return, in violation of 26 U.S.C. § 7206(1). The evidence discussed during counsel's absence was both factually and legally unrelated to Garcia's 1997 tax returns, business income, or spending. Therefore, the error was harmless beyond a reasonable doubt as to Count 2.
2. The 2006 and 2007 Substantive Counts
Counts 3 and 4 charged Garcia with making a false statement on her 2006 and 2007 tax returns, in violation of 26 U.S.C. § 7206(1). Beyond a reasonable doubt, Garcia's convictions for Counts 3 and 4 were not affected by the three minutes of testimony missed by her counsel. Over six days and through the testimony of twenty-three witnesses, the government introduced *1288 overwhelming evidence that Garcia made false statements on her 2006 and 2007 joint tax returns by misrepresenting her gross income. It did so through technical tax and accounting presentations and through a wide variety of witnesses who testified to the Garcias' extraordinary spending in 2006 and 2007. Furthermore, everything discussed during the three minutes counsel was absent had already been admitted into evidence without objection. Moreover, Garcia's counsel proceeded to conduct an extensive cross-examination and then declined to order the record, to make any objections, or to conduct further inquiry into the missed testimony. We are satisfied beyond a reasonable doubt that Garcia's three-minute deprivation of counsel was harmless as to Counts 3 and 4.
IRS Agents Reid, McNeal, and Arevalo testified at length concerning the Garcias' business structure, bank accounts, tax returns, and spending. The government also called the Garcias' certified public accountant (CPA) as a witness; he testified that the Garcias hid five bank accounts from him, instructed him to designate a large portion of Global's income as "shareholder loans," and had him divide up small percentages of the rest of the income between the family. IRS Agent Edwina McNeal prepared a schedule of personal expenditures and identified over $180,000 in checks that were signed by Garcia and withdrawn from Global accounts, but not reported to her accountant in 2006 and 2007. Additionally, Arevalo testified (with counsel present) that Global had no shareholder loans, that it earned considerably more than what Garcia reported, and that it passed through over $400,000 in taxable income to the Garcias in both 2006 and 2007.
Patients, accountants, salespersons, IRS agents, and a real estate attorney testified about the Garcias' significant personal spending in 2006 and 2007, including the purchase of multiple luxury cars and a $2 million home. Agent McNeal identified $440,000 in checks that Garcia endorsed to Angel in 2006, which Garcia admitted were for the home's down payment. The CPA who assisted with the purchase of the home testified that the Garcias gave him copies of fictitious joint tax returns for 2004 through 2006 reflecting substantial gross income (almost $1 million per year) in order to obtain a self-employment verification letter for the purchase of the home. Moreover, Agents Reid and McNeal also reviewed $100,000 in checks that Garcia wrote for the installation of a custom kitchen in the newly purchased home. This is just a snapshot of the evidence the government introduced demonstrating that the Garcias' income was substantially higher than the reported amounts. Notably, all of this evidence was presented in the presence of defense counsel.
The government also presented overwhelming evidence connecting Garcia to the false tax returns and exorbitant spending at issue. IRS Agents Reid, McNeal, and Arevalo testified repeatedly as to the unique characteristics of Garcia's signature, which they identified on multiple documents and checks. Their testimony was supported by other witnesses, such as salesman Charles Fortin, who identified Garcia as the person who signed "Lourdes Garcia" on a $50,000 check drawn on her children's account in 2007.
Arevalo served as the government's twenty-third witness, summarizing much of the previously-admitted evidence. Prior to the lunch break on the sixth day of trial, Arevalo explained in great detail how she examined checks and debit receipts in order to compute how much of Global's funds the Garcias used on personal expenses benefiting their family, and how she compiled this information into a schedule, which was admitted into evidence without *1289 objection. Arevalo's testimony amounted to 130 pages of trial transcript with counsel present. The three minutes of her testimony missed by Garcia's counsel was a fraction of the hours of direct examination, cross examination, redirect, and recross.
In light of the overwhelming evidence against Garcia, it is clear beyond a reasonable doubt that this three-minute portion of Arevalo's testimony did not contribute in any significant way to the verdicts as to Counts 3 and 4. Our conclusion is bolstered by the fact that all of the evidence discussed during those three minutes had already been admitted into evidence without objection. Furthermore, Garcia's counsel cross examined Arevalo for fifty pages of trial transcript regarding the accounts, checks, and transactions listed in Arevalo's schedule. And after the cross, Arevalo repeated on redirect the details of numerous specific checks, how she identified Garcia's signature, how she computed Global's income, and how she attributed specific items to calculate the Garcias' actual income. The error was harmless beyond a reasonable doubt as to Counts 3 and 4.
3. The Conspiracy Count
Finally, the missed testimony was harmless as to the Count 1 conspiracy conviction. Count 1 charged Garcia with conspiring with her husband and others to defraud the United States by making a false statement on her federal income taxes, in violation of 18 U.S.C. § 371. None of the evidence presented during counsel's absence related to the conspiracy elements of Count 1, and the government put forth overwhelming independent evidence of an overt act toward the falsification of tax returns. Indeed, the jury convicted Garcia of personally committing such an act in Counts 2 through 4, which, as discussed above, were not affected by the constitutional error. The Sixth Amendment error did not contribute to the Count 1 conspiracy verdict, and it was therefore harmless beyond a reasonable doubt.
v. Summary
Applying the framework established in Roy , the three-minute absence of Garcia's counsel, although a constitutional violation, was harmless beyond a reasonable doubt as to all counts. I now turn to the absence of Garcia herself.
B. Absence of Garcia
Next, Garcia argues that her five-to-ten minute absence from trial constitutes a separate ground for reversal. I agree that proceeding with Arevalo's direct examination without Garcia present violated her constitutional rights; however, applying the same harmlessness analysis as above, we must affirm.
A defendant's right to be present at trial is grounded in the Sixth Amendment's Confrontation Clause, the Fifth Amendment's Due Process Clause, and Federal Rule of Criminal Procedure 43. See United States v. Novaton , 271 F.3d 968, 997 (11th Cir. 2001). The Confrontation Clause provides the narrowest right, primarily protecting the right of cross-examination, id. , while the Due Process Clause grants a somewhat broader guarantee of presence at any critical stage if that presence "would contribute to the fairness of the procedure." Kentucky v. Stincer , 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987). Rule 43, on its face, provides the broadest right for a defendant to be present. See FED. R. CRIM. P. 43(a) ("[T]he defendant must be present at ... every trial stage...."); see also Novaton , 271 F.3d at 998.
We generally apply the harmless error test to determine whether the absence of a defendant from a portion of a trial warrants reversal. Novaton , 271 F.3d at 998-99 ("[C]ourts have repeatedly held that the *1290 continuation of trial in absence of a defendant may be harmless."); see also Arizona v. Fulminante , 499 U.S. 279, 306-07, 111 S.Ct. 1246, 1263, 113 L.Ed.2d 302 (1991) ; Roy , 855 F.3d at 1141-43. While counsel's simultaneous presence or absence is one relevant factor to be considered in determining whether a defendant's absence was harmless, it is not dispositive. See Novaton , 271 F.3d at 1000.
Here, as discussed in detail above, any deprivation of Garcia's constitutional right to be present during Arevalo's testimony was harmless. Garcia missed five to ten minutes-about seven pages of trial transcript-of a direct examination of the government's twenty-third witness that lasted for multiple hours and 130 pages of the trial transcript. The direct examination clearly had no impact on Counts 1 or 2, which stood independently of Arevalo's testimony. As to Counts 3 and 4, the government had already presented overwhelming evidence that Garcia knowingly made false statements on her 2006 and 2007 tax returns, and all of the evidence discussed by Arevalo had been admitted without objection while she and her counsel were present. Garcia was absent for five to ten minutes of a 2,987 minute trial. Although we have previously found harmful error when a defendant was absent for three full days of trial, see Novaton , 271 F.3d at 996-1000, when a defendant "has been absent for only a brief or minor portion," we have generally found her absence to be harmless. See United States v. Durham , 287 F.3d 1297, 1309 (11th Cir. 2002) (collecting cases). Garcia's absence was brief, minor, and, I conclude, harmless.
C. Simultaneous Absence of Garcia and Her Counsel
Garcia's third claim is that her absence from trial, combined with the absence of her defense attorney, constitutes reversible error. But we have already found beyond a reasonable doubt that the three minutes of testimony missed by both Garcia and her counsel did not contribute to the verdict. Thus, Garcia's arguments only gain traction if we apply a test other than harmless error. Under Roy and Fulminante , however, we are required to apply the harmless error test to the constitutional violations alleged here. That test, as we have already shown, yields no relief for Garcia.
For the foregoing reasons, I think the majority erred in reviewing the constitutional violations for plain error. Although it is my belief that similar constitutional violations will continue to occur in this district court judge's courtroom until this Court recognizes the violations as structural errors, and remands for new, constitutionally-compliant proceedings, I recognize that we are bound by Roy . Under Roy , harmless error beyond a reasonable doubt is the appropriate standard. Accordingly, Garcia is not entitled to relief.

The record is not clear as to when each missing individual-Puglisi, Litwin, and Garcia-returned to the courtroom. The trial transcript shows that the district court announced a one-hour lunch break at 12:30 P.M., and trial resumed at 1:30 P.M. The government's post-lunch direct examination of Arevalo spans seven transcript pages. Puglisi was back by at least the seventh page, as the government passed the witness to her for cross-examination without comment at that time. Because the transcript is not time-stamped, both the government and Garcia assume that counsel was absent during the entire post-lunch direct examination. For the purpose of this appeal, I do as well.

I commend the prosecutor in this case for his candor in persistently drawing the district court's attention to a serious constitutional violation.

Whether this is a fair reading of "critical stage" or a faithful application of Cronic has been vigorously debated by the full court. See, e.g. , Roy , 855 F.3d at 1238-41 (Wilson, J., dissenting) ("I can think of no more critical a stage in criminal proceedings than the admission of inculpatory evidence against a defendant."); id. at 1213 (Rosenbaum, J., concurring in part and concurring in the result) (noting that "[t]he Supreme Court has never held that the absence of counsel for part, but not all, of a critical stage of trial does not constitute structural error" and that Cronic speaks of the absence of counsel not "throughout" but "at a critical stage"). But this test is the one that has been adopted by this Court sitting en banc, and we must respect the prior precedent rule. See Smith v. GTE Corp. , 236 F.3d 1292, 1303 (11th Cir. 2001) ("[W]e categorically reject any exception to the prior panel precedent rule based upon a perceived defect in the prior panel's reasoning or analysis as it relates to the law in existence at that time.").

Doyle v. Ohio , 426 U.S. 610, 611, 96 S.Ct. 2240, 2241, 49 L.Ed.2d 91 (1976) (holding that "use of the defendant's post-arrest silence" "to impeach a defendant's exculpatory story, told for the first time at trial" violates due process).

As noted above, the parties agree that neither defense attorney was present for approximately three minutes of direct examination. However, because the transcript does not contain timestamps, I proceed, out of an abundance of caution, with the assumption that counsel was absent from the end of the lunch break to the beginning of cross examination-the first time that defense counsel's name appears on the transcript. This spans seven pages. See Doc. 77 at 79-85.