**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 7 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CELESTER McKINNEY,

     Petitioner - Appellant,

     v.

L.E. BRUCE, Warden, Hutchinson
Correctional Facility; and PHILL
KLINE, Attorney General of Kansas [1],

     Respondents - Appellees.

No. 04-3308
(D. Ct. No. 02-CV-3248-JAR)
(D. Kan.)

---

**ORDER**

---

Before **TACHA**, Chief Circuit Judge, **BRISCOE** and **HARTZ**, Circuit Judges.

Petitioner-Appellant Celester McKinney applies for a certificate of appealability ("COA") under 28 U.S.C. § 2253(c) so that he may challenge the District Court's denial of his 28 U.S.C. § 2254 habeas petition. [2] Mr. McKinney

---

[1] In the District Court, Mr. McKinney listed Carla J. Stovall, the former Kansas Attorney General, as codefendant.

[2] Mr. McKinney first sought a COA from the District Court, but the District Court never ruled on that motion. Mr. McKinney then filed a timely notice of appeal, a renewed motion for a COA, and an opening brief with this Court. Because the District Court did not issue Mr. McKinney a COA within thirty days of his notice of appeal, we deem the District Court to have denied Mr. McKinney

(continued...)

also requests leave to proceed in forma pauperis. After examining the record in this case, we DENY Mr. McKinney's application for a COA but GRANT his request to proceed in forma pauperis.

Mr. McKinney, his brother Dwayne McKinney, and their cousin Brian Betts were charged with first-degree premeditated murder of Greg Miller. They were accused of shooting Mr. Miller eighteen times with both a shotgun and a rifle. Separate juries entered verdicts against Mr. McKinney and Brian Betts, and a verdict to acquit Dwayne McKinney. The Kansas Supreme Court, on direct appeal, provided a thorough account of the facts underlying Mr. McKinney's conviction for first-degree premeditated murder. *See State v. McKinney*, 33 P.3d 234 (Kan. 2001). The District Court fully recounts the facts as well. As such, we refer to the facts of this case only as needed in our analysis.

Issuance of a COA is jurisdictional. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). A COA can only issue "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that

---

[2](...continued)
a COA. *See Emergency General Order, In re Procedures Regarding the Prison Litigation Reform Act and the Antiterrorist and Effective Death Penalty Act*, No. 96-41 (10th Cir. Oct. 1, 1996).

jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El* , 537 U.S. at 327. Whether a petitioner meets the criteria for the issuance of a COA must be made in light of t he provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Dockins v. Hines* , 374 F.3d 935, 937 (10th Cir. 2004). Pursuant to AEDPA, we must defer to a state court decision adjudicated on the merits unless that decision: "(1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

Mr. McKinney seeks a COA on four issues. Because we hold that reasonable jurists could not disagree with the District Court's well-reasoned and thorough memorandum and order on these issues, we deny his application for a COA. Moreover, because our analysis of these issues is substantially similar to the District Court's, we review Mr. McKinney's claims only briefly.

First, Mr. McKinney alleges a Confrontation Clause violation. At trial, the prosecution called Jimmy Spencer, Jr., the victim's uncle, who testified that a few minutes before the gunshots were fired, the victim left Mr. Spencer's house, telling him that "Les" wanted to talk to him and he was leaving to go see what "Les" wanted. Mr. Spencer thought that the victim was referring to Celester

McKinney.  These statements were admitted pursuant to Kan. Stat. Ann. §

60-460( ℓ)(1), which allows the admission of hearsay statements of the declarant's

then-existing state of mind, including statements of intent or plan.  Despite this

statutory authority, Mr. McKinney contends their admission violates the Sixth

Amendment.

The Kansas Supreme Court applied the two-part test established in *Ohio v.

Roberts*, 448 U.S. 56 (1980), to determine the constitutionality of the statement's

admission.  *McKinney*, 33 P.3d at 342–44.  Under *Roberts*, a statement is

admissible without confrontation of the witness at trial, if the witness is

unavailable and the witness's statement "bears adequate 'indicia of reliability.'"

*Roberts*, 448 U.S. at 66.  A statement bears adequate indicia of reliability if it

falls within a "firmly rooted hearsay exception," such as the state-of-mind

exception codified at Kan. Stat. Ann. § 60-460( ℓ)(1).  *Id*; *see also Moore v.

Reynolds*, 153 F.3d 1086, 1107 (10th Cir. 1998) (holding that state of mind

exception to the hearsay rule satisfies the reliability requirement of *Roberts*).

Hence, the victim's statement was constitutionally admitted pursuant to *Roberts*.

After the Kansas Supreme Court completed its direct review, however, the

United States Supreme Court partially overruled *Roberts*.  *See Crawford v.

Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004).  Of course, most new

constitutional rulings do not apply retroactively on habeas review. *See Teague v. Lane*, 489 U.S. 288, 310–11 (1989). Nevertheless, we need not consider whether *Crawford* applies retroactively because even if it does, Mr. McKinney's claim falls outside the scope of the *Crawford* rule.

*Crawford* distinguishes between testimonial and non-testimonial statements. 541 U.S. at —, 124 S.Ct. at 1374. Testimonial statements include formal statements to government officials, affidavits, testimony at a preliminary hearing, and statements taken by police officers during criminal investigations. *Id.* at 1364–65. The admissibility of these statements are now subject to the traditional common law test of unavailability and prior opportunity for cross-examination. *Id*. at 1374. Non-testimonial statements, by contrast, continue to be analyzed under the *Roberts* regime. *Id*. As the District Court explained, the victim's statements made immediately before his death in his uncle's home are non-testimonial statements. Dist. Ct. Op. at 11–12; *see also Horton v. Allen*, 370 F.3d 75, 84 (1st Cir. 2004) (holding statements made on the day of the murders recounting that defendants' accomplice had told a witness that he needed money and that the victim had refused to give him drugs on credit, which were admitted under the state of mind exception, were non-testimonial). As such, even if *Crawford* applied retroactively, the Kansas Supreme Court properly analyzed this claim under the *Roberts* regime and found no constitutional violation.

Second, Mr. McKinney argues that the prosecutor's closing argument violated his due process rights. Carter Betts, who is Mr. McKinney's uncle and a key prosecution witness, testified that on the night of the shooting the three defendants were watching television in his home when he went to bed, that he heard gunshots and the door closing around 3 A.M., that when he went downstairs to investigate he saw the three defendants with firearms laying at their feet, and that Mr. McKinney stated, "we shot that Greg." During closing arguments, the prosecutor stated that Carter Betts's testimony was not refuted. Mr. McKinney contends that the prosecutor's closing argument improperly shifted the burden of proof to the defendant.

We agree with the District Court and find that the prosecutor's statements at closing do not run afoul of the Due Process Clause. Importantly, the prosecutor did not comment on Mr. McKinney's failure to testify; as such, his Fifth Amendment right to remain silent was not implicated. *See Griffin v. California*, 380 U.S. 609, 613–15 (1965). Next, during closing a prosecutor may properly comment that evidence is not contradicted or rebutted, so long as the prosecutor does not create the impression that only the defendant could rebut the evidence. *See Trice v. Ward*, 196 F.3d 1151, 1167 (10th Cir. 1999) (prosecutor may comment on defendant's failure to present evidence or call witnesses); *Nguyen v. Reynolds*, 131 F.3d 1340, 1358 (10th Cir. 1997) (comments did not

clearly point out petitioner's failure to testify or create impression only petitioner could rebut statement). The prosecutor's statement in this case clearly did not create such an impression and therefore did not violate Mr. McKinney's due process rights.

Third, Mr. McKinney contends that the trial court's handling of a question from the jury violated his right to be present during the trial and his right to an impartial jury. During deliberations, the jury sent a note to the trial judge, which stated: "Carter Betts statement(s) about the conversation in the basement." The trial judge considered this note ambiguous, and without first conferring with parties and counsel, the judge directed the bailiff to return the note to the jury and ask them to be more specific. The jury returned a second note, stating: "We want the trial testimony of Carter Betts' conversation in the basement. Also the testimony of Carter Betts preliminary hearing of the conversations in the basement." At this point, the judge notified the parties and informed them about the first note, the request for clarification, and the contents of the second note. The judge then laid out the following course of action: he intended to read those portions of the direct and cross-examinations of Carter Betts pertaining to the conversations in the basement; advise the jury that there was no transcript of the preliminary hearing admitted as evidence; and ask the jury if that would answer their question. Mr. McKinney objected, arguing that the first note asked for

Carter Betts's statement to the police, not his in-court testimony. Over this objection, the trial judge proceeded with his plan.

Mr. McKinney raises two distinct challenges on this score. He first contends that finding the first note ambiguous and asking for clarification without his presence violates his "right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). The Kansas Supreme Court agreed, but held that the error was harmless. *McKinney*, 33 P.3d at 243.

Under 28 U.S.C. § 2254(d), we defer to this determination unless "the state court's finding of harmless error was contrary to or an unreasonable application of *Chapman*." *Spears v. Mullin*, 343 F.3d 1215, 1232 n.14 (10th Cir. 2003). Mr. McKinney urges that *Illinois v. Allen*, 397 U.S. 337 (1970), and *United States v. Gagnon*, 470 U.S. 522 (1985), demonstrate that the Kansas Supreme Court's determination of harmlessness was objectively unreasonable. We disagree. Neither case discusses harmless error; to the contrary, the Court in both cases held that a constitutional violation did not occur. Moreover, we agree with the Kansas Supreme Court's determination that the jury was given ample opportunity to request Carter Betts's police statement, if it had so desired, rendering the error harmless. *McKinney*, 33 P.3d at 242–43.

Mr. McKinney also contends that the reading back of testimony to the jury violated his right to a fair trial before an impartial jury. Under Kansas law, the jury enjoys the right to have testimony read back to it. Kan. Stat. Ann. § 22-3420(3). Mr. McKinney does not cite, nor can we find, any clearly established Supreme Court precedent that renders application of § 22-3420(3) unconstitutional under these circumstances.

Finally, Mr. McKinney argues that the trial court violated his rights to due process and a fair trial when it denied his request for a new trial. Carter Betts testified that in his initial statement to the police, he had stated that the three defendants were in bed asleep at the time the shots were fired. When he was later questioned at the police station, however, he changed his story out of fear of being implicated in the murder. At trial, he testified that on the night of the shooting the three defendants were watching television in his home when he went to bed, that he heard gunshots and the door closing around 3 A.M., that when he went downstairs to investigate he saw the three defendants with firearms laying at their feet, and that Mr. McKinney stated, "we shot that Greg." After the trial, Carter Betts signed a letter authored by his sister, the mother of Mr. McKinney, which stated that he wanted to discredit his testimony. At the hearing for a new trial, Carter Betts testified that his trial testimony was given under duress because it was difficult to speak out against his nephews.

The trial court found that Carter Betts's trial testimony was truthful and therefore denied Mr. McKinney's motion for a new trial. The Kansas Supreme Court affirmed the denial, concluding that the trial court did not abuse its discretion in finding Mr. Betts's testimony truthful. *McKinney*, 33 P.3d at 338–39. Mr. McKinney has not demonstrated that this factual finding is clearly and convincingly incorrect. Therefore, we must defer to the state court's determination. *See* 28 U.S.C. § 2254(e)(1). Because we must deem that the evidence given at trial by Carter Betts was truthful, Mr. McKinney cannot make out a due process claim for the denial of the motion for retrial. *See Giglio v. United States*, 405 U.S. 150, 154 (1972).

Because we hold that reasonable jurists could not disagree with the District Court's disposition of this habeas petition, Mr. McKinney's application for a COA is DENIED. His motion to proceed in forma pauperis is GRANTED.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Chief Circuit Judge