NOT DESIGNATED FOR PUBLICATION

No. 122,359

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CELESTER MCKINNEY,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion filed October 2, 2020. Reversed and remanded with directions.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, for appellant.

*Daniel G. Obermeier*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., WARNER, J., and BURGESS, S.J.

PER CURIAM: Celester McKinney appeals the district court's summary denial of his second K.S.A. 60-1507 motion without a hearing. Immediately after his trial in 1998, McKinney claimed that his 1997 murder conviction was rendered suspect because his uncle—who had testified as a State's witness in the trial—had since recanted his testimony, claiming detectives who had worked on the case had pressured him to change his story. The district court found that the uncle's trial testimony was credible and discounted his effort to recant that testimony. The Kansas Supreme Court affirmed that finding. McKinney then filed a motion under K.S.A. 60-1507 on similar grounds, which the district court denied; this court affirmed the lower court's decision.

1

In his current motion, McKinney again points to his uncle's changed statement. This motion, however, points out that his uncle's trial testimony and the testimony of another witness could have been influenced by a Kansas City detective whose actions contributed to the wrongful conviction of another individual. McKinney states that he has since learned that this detective, who is tied to the case through trial testimony, was the uncle of the murder victim and the brother-in-law of the other key trial witness. We conclude that based on these circumstances, viewed in light of the testimony at McKinney's trial that the detective was one of two law enforcement officers who worked on the case, that the district court erred when it summarily denied McKinney's motion. We therefore reverse that decision and remand the case for an evidentiary hearing on McKinney's claim.

FACTUAL AND PROCEDURAL BACKGROUND

The Kansas Supreme Court addressed the facts giving rise to McKinney's murder conviction in his direct appeal. See *State v. McKinney*, 272 Kan. 331, 33 P.3d 234 (2001), *overruled on other grounds by State v. Davis*, 283 Kan. 569, 158 P.3d 317 (2006). Early on the morning of December 29, 1997, Greg Miller was shot and killed in Kansas City. The State charged McKinney, his brother Dwayne McKinney, and their cousin Brian Betts with Miller's murder. In separate trials, juries convicted McKinney and Brian but acquitted Dwayne. McKinney received a hard 25 life sentence, making him ineligible for parole for 25 years.

The State's case against McKinney relied primarily on two witnesses. Jimmy Spencer, Jr.—Miller's uncle and roommate—implicated McKinney. Spencer testified that before the shooting, Miller told him that McKinney wanted to talk. Shortly after Miller left to speak with McKinney, Spencer heard gunshots. Spencer then found Miller and left to find whoever shot him. Though he had previously told the police that he did not see the

2

murder, at trial Spencer testified that he did witness the shooting and identified the type of gun used to commit the murder.

The State's primary witness at trial was Carter Betts—the uncle and housemate of all three murder suspects. Betts testified that after the shooting, he heard the front door to his house open and close. He went downstairs and found McKinney, Dwayne, and Brian in the basement with two guns. There, McKinney explained to Betts how and why they killed Miller.

Betts talked to Kansas City, Kansas, Police Department (KCKPD) detectives twice. Three weeks after the shooting, two detectives came to his house to ask questions. He told the detectives that he and his nephews had been in bed asleep during the shooting. But on February 5, 1998, Betts gave a formal statement at the police department, substantially altering his previous account. In his formal statement, Betts discussed McKinney's confession. Betts explained that he had initially lied to the detectives to protect his nephews but decided to implicate them because it was the right thing to do. Betts later stated that he had feared that if he had not implicated his nephews, he would have been suspected for involvement in the crime.

Although Betts found it difficult to testify against his nephews, his testimony remained consistent throughout the preliminary hearing, the pretrial hearings, and the three nephews' trials. But after McKinney's conviction, Betts sent a letter (which he admitted was written by his sister, McKinney's mother) recanting his trial testimony and reaffirming his original statement—that he had been asleep the morning of Miller's murder. Betts stated in the letter that he fabricated McKinney's confession, using details provided by the KCKPD detectives, to avoid becoming a suspect. And he alleged "the detectives" pressured him to change his story, and the prosecutor threatened to implicate him in the murder if he told the truth.

3

McKinney requested a new trial based on Betts' recanted testimony, and the district court held an evidentiary hearing. Betts explained he was originally interviewed by two detectives—Detective Smith, who was a black man, and another male detective, who was white. When Betts told the detectives that he had slept through the events, they informed him that they did not believe his story; they already knew McKinney and Dwayne were involved and pressed Betts for additional information. The record includes no definitive statement as to the identity of the second detective, but one officer who testified at trial indicated that it was "Detective Golubski."

Betts further explained that when he provided his formal statement to the police a few weeks later, the only detective present was Detective Smith. At that point, Detective Smith suggested that Betts could become a suspect if he did not provide the information the department was seeking. Betts testified that the formal statement he had given to the police was "false." And he testified that he "felt pressured by the detective and the DA to make that statement." Betts then testified extensively about actions the prosecutor took during the course of McKinney's pretrial proceedings and trial to ensure Betts would provide testimony consistent with his formal statement.

After the hearing on this motion, the district court found Betts' recantation unconvincing and denied McKinney's motion for a new trial. The Kansas Supreme Court affirmed McKinney's convictions, holding that the district court's findings were supported by the record and that the court did not abuse its discretion by denying the motion for a new trial. 272 Kan. at 337-39.

McKinney filed a federal habeas petition, raising many of the same challenges he brought in his direct appeal. *McKinney v. Bruce*, No. 02-3248-JAR, 2004 WL 1730326, at *1 (D. Kan. 2004) (unpublished opinion), *aff'd* 125 F. Appx. 947 (10th Cir. 2005). In its review of the district court's denial of the petition, the Tenth Circuit noted that the "trial court found that Carter Betts's trial testimony was truthful." 125 F. Appx. at 952.

4

The court thus again rejected McKinney's argument that he should be allowed a new trial in light of Betts' posttrial efforts to recant his testimony.

In June 2005, roughly four months after the Tenth Circuit issued its opinion affirming the dismissal of his federal habeas action, McKinney filed a motion in state court under K.S.A. 60-1507. He argued, among other things, that the district court's posttrial determination regarding whether Betts' recantation was credible should have been made by the jury, not a judge. This court rejected that argument, finding that "our cases clearly hold whether to grant a motion for a new trial based on newly discovered evidence lies within the sound discretion of the trial court." *McKinney v. State*, No. 97,513, 2007 WL 4577926, at *4 (Kan. App. 2007) (unpublished opinion).

In August 2019, McKinney filed the K.S.A. 60-1507 motion now before us. This motion asserted six claims. Relevant to this appeal, McKinney asserted that the State had not revealed that Detective Roger Golubski was an uncle to the victim and brother-in-law to Spencer. He also noted that it has recently come to light that Detective Golubski was instrumental in the wrongful conviction of another man, Lamonte McIntyre. McKinney argued that this information, combined with the detective's relationship with the victim and a witness, and viewed in light of Betts' repeated assertions that he altered his story after pressured by KCKPD detectives, warranted a new trial. Although McKinney noted his motion was both untimely and successive, he argued manifest injustice and exceptional circumstances overcame these procedural barriers.

The district court summarily denied his motion, concluding it was untimely, successive, and barred, in part, by res judicata. It also discussed the merits of each claim. Regarding the newly discovered evidence claim, the court noted that McKinney presented no evidence that Detective Golubski played any role in his case. McKinney appeals.

DISCUSSION

McKinney argues the district court erred by summarily denying his K.S.A. 60-1507 motion. He contends that when a petitioner makes a plausible evidentiary argument of a colorable claim of actual innocence, Kansas Supreme Court precedent requires the court to hold an evidentiary hearing.

A district court has three options when reviewing a habeas motion. The court may order an evidentiary hearing if its review of the motions, files, and case records indicates a substantial issue actually exists. It may order a preliminary hearing and assign the movant counsel if a potentially substantial issue exists. Or it may summarily deny the motion if the review conclusively shows the movant is not entitled to relief. *Hayes v. State*, 307 Kan. 9, 12, 404 P.3d 676 (2017); see K.S.A. 2019 Supp. 60-1507(b). The movant bears the burden of proving that the motion requires an evidentiary hearing. *Holt v. State*, 290 Kan. 491, Syl. ¶ 3, 232 P.3d 848 (2010).

Appellate courts review a summary denial de novo. 290 Kan. 491, Syl. ¶ 2. When evaluating the district court's decision, an appellate court performs the same review as the district court—determining whether the movant is conclusively entitled to no relief based on the motions, files, and case records. 290 Kan. 491, Syl. ¶ 2.

McKinney's motion faces several procedural obstacles before a court can review his substantive arguments. First, a K.S.A. 60-1507 motion must generally be brought within one year of the final judgment in a person's direct appeal. K.S.A. 2019 Supp. 60-1507(f)(1). A court may excuse an untimely motion to prevent manifest injustice, such as when a defendant makes a colorable claim of actual innocence. K.S.A. 2019 Supp. 60-1507(f)(2)(A). Absent a manifest injustice finding, the court must dismiss an untimely motion. K.S.A. 2019 Supp. 60-1507(f)(3).

Second, this is not McKinney's first motion under K.S.A. 60-1507. When a defendant files a K.S.A. 60-1507 motion, courts presume the movant has listed all grounds upon which he or she will rely. *Toney v. State*, 39 Kan. App. 2d 944, 948, 187 P.3d 122, *rev. denied* 287 Kan. 769 (2008). A court is "not . . . required to entertain a second or successive motion for similar relief." K.S.A. 2019 Supp. 60-1507(c). This rule against successive motions is meant to promote finality and to avoid piecemeal litigation. 39 Kan. App. 2d at 948. But courts may address a successive motion when exceptional circumstances warrant that review—including when "unusual events or intervening changes in the law . . . prevented the defendant from raising the issue in a preceding 60-1507 motion." *Holt*, 290 Kan. 491, Syl. ¶ 4. McKinney has previously filed two habeas actions, one in federal court and the other in state court, and so he bears the burden of demonstrating exceptional circumstances that warrant review of his current motion.

Finally, courts are loath to reconsider issues that have already been litigated. Here, McKinney raised his uncle's recantation in his posttrial motion for a new trial and direct appeal, his federal habeas petition, and his first K.S.A. 60-1507 motion. In each of those cases, the respective courts noted that the district court had found that Betts' trial testimony, and not his posttrial explanation, was credible—a finding the Kansas Supreme Court affirmed. Normally, the principle of issue preclusion may prevent relitigation of settled questions. See *Rice v. State*, 37 Kan. App. 2d 456, 462, 154 P.3d 537 (noting the application of issue preclusion in K.S.A. 60-1507 motions and federal habeas actions), *rev. denied* 284 Kan. 946 (2007). Cf. *Drach v. Bruce*, 281 Kan. 1058, Syl. ¶ 14, 136 P.3d 390 (2006) (applying principle of res judicata to a K.S.A. 60-1507 motion).

But when a defendant makes a plausible argument of his or her actual innocence— that is, that new evidence has come to light and that it is more likely than not that no reasonable juror would convict the movant in light of the new evidence—the one-year time limitation in Kansas' habeas statute does not apply. See K.S.A. 2019 Supp. 60-1507(f)(2)(A); *Beauclair v. State*, 308 Kan. 284, 299-300, 419 P.3d 1180 (2018). And the

7

rules against successive motions and previously litigated issues do not prevent a court's consideration of newly discovered evidence that was not available when a question was previously litigated. See *Bogguess v. State*, 306 Kan. 574, 580, 395 P.3d 447 (2017) (preclusive principles only apply when the current question either was or could have been raised previously). Thus, our analysis of these procedural hurdles in this case collapses into one gatekeeping question: Has McKinney raised a substantial claim, based on evidence not previously available, that could lead a "'reasonable juror [to] have reasonable doubt'" about his guilt? *Beauclair*, 308 Kan. at 301 (quoting *House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064, 165 L. Ed. 2d 1 [2006]).

McKinney asserts that the district court should have held an evidentiary hearing on his claims regarding Detective Golubski's role in his case. The State argues that the district court determined more than two decades ago that Betts' attempt to recant his testimony was not credible, and this court is bound by that determination. The State points out that McKinney's questions regarding Detective Golubski's role go to *why* Betts recanted his testimony, but those questions do not undermine the district court's previous credibility assessment.

We disagree with the State's assessment. McKinney's motion asserts that he was previously unaware that one of the detectives involved in his case was related to both the victim and one of two key witnesses for the State. He argues that this witness, Spencer, testified as to information that he would have otherwise not had at his disposal unless it had been provided to him by law enforcement, including the type of gun used at the murder scene. This argument has not previously been considered by the courts. McKinney further points out that Betts has consistently indicated since the trial that he was pressured into changing his original account of events by "the detectives" who worked on the case. And he recently learned that Detective Golubski had employed methods of procuring a conviction through false testimony in another case in the 1990s. Again, this information was not available to McKinney when he previously sought a new

8

trial and other postconviction relief. Thus, the district court erred when it denied McKinney's motion on preclusive and successive grounds.

The district court also concluded McKinney did not "provide support for the belief that [Detective Golubski] participated in the underlying investigation." But McKinney's statements that the detective was involved with his case are borne out by the trial transcript, where another officer testified that Detective Golubski had joined Detective Smith in interviewing witnesses and working on the case. And the district court's other statements in its order, indicating that Detective Golubski has since retired from the police department and has not been charged in association with the McIntyre proceedings, go to the weight of the evidence McKinney has brought to the court's attention—a matter that should be considered in light of all the evidence presented, not summarily decided without a hearing.

For these reasons, the district court erred when it concluded "the motions and the files and records of the case conclusively show[ed]" that McKinney was not entitled to relief. See K.S.A. 2019 Supp. 60-1507(b). McKinney has raised a substantial claim regarding the proceedings that gave rise to his conviction with regard to the relationship of the detective to the victim and witness in the case, as well as his role in procuring Betts' testimony. Accord *Beauclair*, 308 Kan. at 303-04. We therefore reverse the court's summary denial of those claims and remand the case for an evidentiary hearing under K.S.A. 2019 Supp. 60-1507(b).

Reversed and remanded with directions.